PEOPLE *v.* AUSTIN.

1. CRIMINAL LAW—FALSE ADVERTISING—GASOLINE—QUESTION OF FACT.

The question of whether the advertising of gasoline as a ''grade number one gasoline'' was merely an attempt at ''puffing'' the product sold or was a statement made with intent to deceive the purchasing public as to the grade of gasoline as tested by standards commonly applied to gasoline and the standards on the basis of which gasolines are listed in the Jobber's Manual *held,* a question of fact for trial determination, on defendant's appeal from denial of motion to dismiss information charging it with false advertising (Act No. 328, § 33, Pub. Acts 1931).

2. FALSE PRETENSES—ADVERTISING—REPRESENTATION OF FACT.

In any given case it is a question of fact whether the representation of fact in an advertisement is untrue, deceptive, or misleading (Act No. 328, § 33, Pub. Acts 1931).

3. SAME—FALSE ADVERTISING—STATUTES—COMMODITY STANDARDS.

In a prosecution under statute prohibiting false advertising it is not essential that a standard or grade criterion should be established by. law, it being sufficient if in fact there are established standards or grades commonly known to the trade in the particular commodity (Act No. 328, § 33, Pub. Acts 1931).

4. SAME—FALSE ADVERTISING—GASOLINE.

In prosecution for violation of statute relating to false advertising, examining magistrate was justified in binding retailer of gasoline over for trial where testimony taken before him showed advertising of third-grade gasoline, according to a standard established by the bureau of standards, as a "grade number one gasoline" (Act No. 328, § 33, Pub. Acts 1931).

5. INDICTMENT AND INFORMATION—FALSE ADVERTISING—STATUTES.

Information providing that defendants, engaged in the distribution and sale of gasoline, caused circulation of advertisements about it representing it as "grade number one gasoline," averring same to be untrue, deceptive and misleading, contrary to the form of the statute in such case made and provided and against the peace and dignity of the people of the State, aptly charged a violation of the statute penalizing false advertising (Act No. 328, § 33, Pub. Acts 1931).

6. STATUTES—UNFAIR DISCRIMINATION—GASOLINE—SECTIONS—COMMUNITIES.

Statute providing a penalty for discrimination in the sale of petroleum products between different "sections, communities or cities of this State, by selling such commodity at a lower rate in one section, community or city than is charged" therefor "in another section, community or city, after making due allowance for the difference, if any, in the grade or quality and in the actual cost of transportation from the point of production" or manufacture, as applied to prosecution for discrimination between sales made by defendant retailer of gasoline at three different places within the same city *held,* so indefinite and uncertain, insofar as the terms "section" and "community" are concerned, as to result in failure to create or define any criminal offense (Act No. 328, § 555, Pub. Acts 1931).

7. SAME—NEW OFFENSES—TERMS.

The terms of a penal statute creating a new offense must be
sufficiently explicit to inform those who are subject to it
what conduct on their part will render them liable to its
penalties.

8. SAME—DUE PROCESS.

A statute which either forbids or requires the doing of an act
in terms so vague that men of common intelligence must neces-
sarily guess at its meaning and differ as to its application
violates the first essential of due process of law.

Appeal from Recorder's Court of Detroit; Van
Zile (Donald), J. Submitted April 7, 1942. (Cal-
endar No. 40,655.) Decided May 18, 1942.

Charles E. Austin, Inc., and Margret P. Austin
were charged with unfair discrimination in the sale
of petroleum products and Charles E. Austin, Inc.,
was also charged with false advertising. Defend-
ants review denial of motion to dismiss by appeal in
nature of certiorari. Affirmed in part and reversed
in part.

*John P. O'Hara (John F. Wagner, of counsel), for
appellants.*

*Herbert J. Rushton, Attorney General, Edmund
E. Shepherd, Solicitor General, William C. Dowling,*
Prosecuting Attorney, and *Ralph E. Helper,* Assist-
ant Prosecuting Attorney, for the people.

NORTH, J. These defendants were arraigned in
the recorder's court of Detroit on an information
charging violation of sections 33 and 555 of the 1931
Michigan penal code. See Act No. 328, §§ 33, 555,
Pub. Acts 1931 (Comp. Laws Supp. 1940, §§ 17115–
33, 17115–555, Stat. Ann. §§ 28.222, 28.823). De-
fendant's motion to quash on grounds hereinafter
noted was denied. The trial court granted a stay,
and leave having been obtained, defendants have
appealed.

In so far as the charge against defendants is laid under section 33 of the Michigan penal code, which penalizes false advertising, appellants' counsel contends that advertising "Joy Gasoline" sold by appellants as "Grade number one gasoline"—"Save four cents" was not in violation of the statute "because no standard or grade criterion is established by law." We quote the material portion of the information:

"(Defendants) being engaged in the distribution and sale of petroleum products, to-wit: gasoline, known as Joy gasoline, did make, publish, disseminate, circulate and place before the public, certain posters, signs and advertisements regarding certain merchandise, namely, gasoline more particularly known as Joy gasoline, offered for sale, by them, the said Charles E. Austin Company, a Michigan corporation, and Margret Austin, to the public in the city of Detroit, county of Wayne and State of Michigan, as follows: 'Grade number one gasoline'—'Save four cents,' which posters, signs and advertisements contained assertions, representations and statements that were untrue, deceptive and misleading, in that the said gasoline was not grade one gasoline and the public did not save four cents on grade one gasoline, because said gasoline was not grade one gasoline; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the people of the State of Michigan (citing Michigan penal code [Act No. 328, § 33, Pub. Acts 1931])."

The testimony taken before the examining magistrate is in the record on this appeal. An expert witness testified that for the purpose of determining its grade he had made tests of the "Joy Gasoline;" and after testifying that, as established throughout the United States by the Bureau of Standards, gasoline is classified as (1) Grade A-1 or premium gasoline, (2) Second-grade or regular gasoline, and (3) a

Third-grade gasoline, this expert testified that his laboratory test "put this (Joy) gasoline in the bracket of the third class."

We cannot accept the contention in appellants' brief that by advertising "Joy Gasoline" in the manner noted there was merely an attempt at "puffing" the product sold; and since that is no offense it is asserted the charge in this respect should have been dismissed. Instead, we think it was a question of fact for trial determination whether the advertising statements used were so used with the intent to deceive the purchasing public as to the grade of "Joy Gasoline" as tested by standards commonly applied to gasoline and the standards on the basis of which gasolines are listed in the Jobber's Manual. As we held in *Jasnowski* v. *Judge of Recorder's Court of the City of Detroit,* 192 Mich. 139:

"In any given case it would be a question of fact whether the representation of fact in the advertisement was untrue, deceptive, or misleading."

It is not essential to prosecutions under this statute that a standard or grade criterion should be established by law. It is sufficient if in fact there are established standards or grades commonly known to the trade in the particular commodity; and this record contains testimony to that effect. The examination before the magistrate was sufficient to justify binding defendants over for trial, and the information aptly charges violation of the statute which penalizes false advertising.

Appellants strenuously urge that section 555 of the Michigan penal code is unconstitutional. The pertinent portion of this section reads:

"SEC. 555. Unfair discrimination in sale of petroleum products. Any person doing business in the State, and engaged in the production, manufacture

or distribution of any petroleum products, who shall intentionally, for the purpose of destroying the business of a competitor in any locality, discriminate between different sections, communities or cities of this State, by selling such commodity at a lower rate in one section, community or city, than is charged for said commodity by said party in another section, community or city, after making due allowance for the difference, if any, in the grade or quality and in the actual cost of transportation from the point of production, if a raw product, or from the point of manufacture, if a manufactured product, shall be guilty of a misdemeanor.''

The phase of the information charging an offense under the above-quoted section sets forth that defendants being engaged in the distribution and sale of petroleum products, to-wit: gasoline known as Joy gasoline, did intentionally, for the purpose of destroying the business of a competitor in the city of Detroit, discriminate between different sections and communities by selling such gasoline at a lower rate in one section or community than they charged for the same gasoline in another section or community, by selling to John Mulligan nine gallons of Joy gasoline for $1 at 8951 Woodward Avenue, eight gallons of Joy gasoline for $1 at 9901 Grand River avenue, and seven gallons of Joy gasoline for $1 at 3641 Grand River avenue, all of the stated places being in the city of Detroit, Wayne county, Michigan. Appellants contend that the above-quoted statute, as well as the information, by charging sales of the same gasoline at varying prices in ''different sections and different communities'' does not under the facts of this case validly charge defendants with a commission of any offense. In this particular they rely upon *State* v. *Texas Co.*, 136 S. C. 200 (134 S. E. 211), wherein the court passing upon a statute expressed in like words held that the reference to sec-

tions and communities meant sections and communities outside of a given city, and did not apply to different sections or communities within the same city. In a later decision of the supreme court of South Carolina a statute of like character was held unconstitutional on the ground that in its essential terms it was indefinite and uncertain. See *State* v. *Standard Oil Company of New Jersey,* 195 S. C. 267 (10 S. E. [2d] 778).

The statute involved in this later case in part reads:

"Any person, firm, company * * * engaged in the production, manufacture or distribution of any commodity in general use, that for the purpose of injuring or destroying the business of a competitor in any town, village, city or locality discriminate between different purchasers of such commodity in general use in such village, town or cities in this State, or discriminate between such purchasers in different sections, communities, cities or towns of this State, by selling such commodity at a lower rate to one purchaser in the same city, town, section, community than is charged for said commodity by a person, firm, company, association or corporation in another section of said city, town, community or locality * * * shall be deemed guilty of unfair discrimination, which is hereby prohibited and declared to be unlawful." South Carolina Civil Code, 1932, § 6626.

Among other grounds upon which the South Carolina statute was held invalid was that the terms "sections" and "community" are so indefinite as used in the statute that they failed to define or specify the particular offense sought to be covered by the statute. One of the headnotes (10 S. E. [2d] 778) reads as follows:

"The statute making it unlawful to discriminate between different purchasers of a commodity in gen-

eral use by sale at a lower rate to one purchaser than is charged in another 'section' of the same city, 'community,' or 'locality' is unconstitutional on ground that sections of town would have to be created upon some basis which would constitute a reasonable relationship to the evil sought to be corrected, and therefore city could not be arbitrarily sectionalized, and that use of undefined and unexplained quoted terms and others rendered statute indefinite and uncertain and insufficient to define with reasonable certainty what acts are unlawful.''

In the instant case where all of the places of the alleged sales are in the city of Detroit, any attempt to apply to the facts the statutory terms of ''different sections'' or ''communities'' renders these terms so uncertain and incapable of accurate definition that one could not know with any degree of certainty whether he was committing the offense against which the statute is aimed. We know of no definition or rule of law which within a given city would with any degree of certainty fix the line between two separate ''sections'' or ''communities'' in the sense that those terms are used in this statute.

''That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.'' *Connally* v. *General Construction Co.*, 269 U. S. 385, 391 (46 Sup. Ct. Rep. 126, 70 L. Ed. 322).

''But, in order to constitute a crime, the act must be one which the party is able to know in advance

whether it is criminal or not. The criminality of an act cannot depend upon whether a jury may think it reasonable or unreasonable. There must be some definiteness and certainty." *Tozer* v. *United States*, 52 Fed. 917.

We deem it unnecessary at this time to pass upon whether the statute here involved as applied to a different set of facts would be valid. An interesting and informative note will be found in 52 A. L. R. 169–175. However, as attempted to be applied to the facts of the instant case, the noted statutory terms are so indefinite and uncertain as to result in a failure legally to create or define any criminal offense.

Appellants' motion to quash the information in so far as it attempts to charge them with violation of section 555 of the Michigan penal code should have been granted, and the trial court's denial of this motion is reversed. But refusal by the trial court to quash the information wherein it charges violation of section 33 of the Michigan penal code is affirmed, and the case remanded for trial. However, in this connection it should be noted that it appears from a calendar entry of June 2, 1938, that "Upon motion of assistant prosecuting attorney cause of Margret Austin dismissed as to count for false advertising."

Chandler, C. J., and Boyles, Starr, Wiest, Butzel, Bushnell, and Sharpe, JJ., concurred.