SCOTT v HARPER RECREATION, INC

Docket No. 92995. Decided October 15, 1993. On application by the
defendant for leave to appeal, the Supreme Court, in lieu of
granting leave, reversed the judgment of the Court of Appeals
and reinstated the judgment of the circuit court.

Andre Scott brought an action in the Wayne Circuit Court
against Harper Recreation, Inc., alleging that, by advertising
that its night club parking lot was lighted and guarded, the
defendant voluntarily assumed responsibility to protect the
plaintiff from an assault suffered when an unidentified gunman
shot him in the face. The court, Robert J. Colombo, J., granted
summary disposition for the defendant. The Court of Appeals,
DOCTOROFF, P.J., and McDONALD and BRENNAN, JJ., reversed
and remanded, holding that while the defendant was not re-
sponsible for providing secure parking for its patrons, because
it so advertised in order to attract patrons, it voluntarily
assumed the duty to provide security (Docket No. 122982). The
Supreme Court remanded the case to the circuit court, 442
Mich 882 (1993). On remand, the court ruled that, with regard
to both counts of the amended complaint, summary disposition
should be granted under MCR 2.116(C)(10). The defendant seeks
leave to appeal.

In an opinion per curiam, signed by Chief Justice CAVANAGH,
and Justices BRICKLEY, BOYLE, RILEY, GRIFFIN, and MALLETT,
the Supreme Court held:

Summary disposition was appropriate.

As a matter of law, a merchant ordinarily is not required to
protect customers from the criminal acts of third persons. Suits
may not be maintained on the theory that safety measures are
less effective than they could or should have been. In this case,
the defendant did not guarantee the plaintiff's personal safety.
Rather, it provided all that it advertised, i.e., parking that was
free, ample, lighted, and guarded. It did not advertise a crime-
free haven from ordinary life, and public policy would render
unenforceable any such promise unless it were both reasonable
and entirely explicit.

Reversed.

Justice LEVIN, dissenting, stated that leave to appeal should

be denied. Peremptory disposition, without plenary consideration, full briefing, oral argument, and an opportunity for the profession to file briefs as amici curiae, should be reserved for cases in which the law is settled and factual assessment is not required. The cause should be returned to the circuit court for consideration of the defendant's motion for summary disposition under MCR 2.116(C)(10), but not until Harper Recreation specifically identifies one or more issues about which it is claimed there is no genuine issue regarding any material fact and the motion is supported by affidavits, depositions, admissions, or other documentary evidence.

192 Mich App 137; 480 NW2d 270 (1991) reversed.

*Rhodes, Laramie & Williams, P.C.* (by *Robert E. Laramie*), for the plaintiff.

*Kallas & Henk, P.C.* (by *Scott L. Feuer*), for the defendant.

PER CURIAM. The plaintiff was shot while in the parking lot of a night club that had advertised a lighted and guarded parking area. He sued the night club, stating several theories of recovery. The circuit court granted summary disposition, which the Court of Appeals reversed. We believe that summary disposition was appropriate, and we therefore reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court.

I

Defendant Harper Recreation, Inc., operated the Club UBQ, a night club with music and dancing.[1] The defendant advertised with written fliers that

[1] This case has not been tried. The facts, which are to be examined in the light most favorable to the plaintiff, are drawn from the pleadings and, where appropriate, from the deposition testimony.

included a representation that it provided "Free Ample Lighted Security Parking."[2]

The plaintiff was at Club UBQ on the evening of Thursday, August 27, 1987. He had been there twenty or thirty times previously, over the preceding three or four years. Sometimes he parked in the parking lot, sometimes on the street.

There is no dispute that, on the evening of August 27, the lot was fenced and lighted. Further, it is clear from the deposition testimony of the plaintiff and others that security guards were present.

The plaintiff left Club UBQ after midnight, and walked to his car in the club parking lot. At his car, he was surprised by an unidentified gunman, who shot him six times. The plaintiff suffered serious facial injuries, including the loss of an eye.

II

The plaintiff filed a complaint and, several months later, an amended complaint against the defendant. He recounted the basic facts of the case, and alleged two theories of recovery. Count I of the amended complaint was entitled "Fraud and Estoppel." Count II was labeled "Voluntary Assumption."

The plaintiff's fraud/estoppel count contained these factual allegations: The defendant's advertisements were intended to induce attendance by the general public, "without fear of criminal activity." Because of the advertisements, the plaintiff believed the parking area to be secure and thus parked in the lot. He "reasonably believed himself safe from criminal activity" while in the lot, and the advertisements caused him to relax his normal

---

[2] The plaintiff states that a similar representation was made in the defendant's radio commercials.

vigilance for criminal activity. As a result, his assailant was able to surprise him at his car. The lot was lighted and fenced, but the defendant failed to provide security personnel.

In the fraud/estoppel count, the plaintiff asserted that, by virtue of its advertisements, the defendant accepted a responsibility to the plaintiff to provide lighted security parking and, thereby, to protect the plaintiff from an assault of the sort that occurred in this case. The plaintiff added that the defendant should be estopped from denying the existence of such an obligation.

In the assumed-duty count, the plaintiff alleged that the defendant's advertising was intended to bring more patrons to Club UBQ "by eliminating the fear of criminal activity." He proposed that the advertisements constituted a voluntary undertaking to provide a safe parking lot (or, as he also stated, "to exercise reasonable care" to provide a safe lot). The defendant was said to have breached this voluntarily assumed responsibility by failing to provide adequate security to make the lot safe, and by allowing an armed assailant to be present in the lot.

The defendant filed a motion for summary disposition under MCR 2.116(C)(8), asserting that the plaintiff had failed to state a claim on which relief could be granted. The defendant asserted that, under Michigan law, it did not owe a duty to the plaintiff to protect him from the criminal acts of third parties. *Williams v Cunningham Drug Stores,* 429 Mich 495; 418 NW2d 381 (1988).

The circuit court initially granted summary disposition on the assumed-duty count, alone. The court relied upon *Tame v A L Damman Co,* 177 Mich App 453; 442 NW2d 679 (1989), where the Court of Appeals declined to impose liability on a merchant who recognized the need for security

and voluntarily kept a security guard on the premises.

Seeking summary disposition on the fraud/estoppel count, as well, the defendant renewed its motion. This time, it cited both MCR 2.116(C)(8) and MCR 2.116(C)(10), thus adding an assertion that there was no genuine issue as to any material fact, and that it was entitled to judgment as a matter of law.

Again ruling under MCR 2.116(C)(8) and citing *Tame*, the circuit court granted summary disposition on the fraud/estoppel count. The court further held that "the allegations relating to fraud pertain to a future event" and therefore were not "actionable fraud and misrepresentation."

In sum, the circuit court's rulings provided the defendant full summary disposition in its favor.

III

The plaintiff appealed in the Court of Appeals, which reversed the summary disposition and remanded the case to the circuit court for further proceedings. 192 Mich App 137; 480 NW2d 270 (1991).

The Court of Appeals began its analysis with the assumed-duty count of the plaintiff's amended complaint. It distinguished *Williams* as a non-feasance case, saying that the present case concerns alleged *misfeasance* with regard to a voluntarily assumed obligation to provide security. The Court of Appeals explained:

> In the case at bar, given the holding in *Williams*, it is clear defendant did not have a responsibility to provide secure parking for its patrons. However, because defendant did so and allegedly advertised this fact in order to attract patrons, it

voluntarily assumed the duty to provide security. This fact distinguishes the case at bar from *Williams*. Plaintiff's complaint clearly alleges active misconduct in that defendant advertised secure parking, but allegedly failed to provide the same at the time of plaintiff's assault. Although defendant did not have the duty to provide security, once it did so and patrons relied on this fact to do business there, a cause of action could exist if defendant was negligent in its performance of that responsibility and thereby increased the risk of harm to patrons. In his complaint, plaintiff has alleged defendant increased the risk of harm by advertising secure parking, thereby causing patrons, including plaintiff, to be less wary of criminal activity. The extent of the duty assumed by defendant would involve factual issues based on advertisements and security actually provided, and a corresponding standard of care. [192 Mich App 142-143.]

Turning to the fraud/estoppel count, the Court of Appeals noted the elements of a cause of action for fraud,[3] and agreed with the circuit court that future promises cannot give rise to such an action.[4] However, the Court disputed the circuit court's

---

[3] "The general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery." [*Hi-Way Motor Co v Int'l Harvester Co,* 398 Mich 330, 336; 247 NW2d 813 (1976), quoting *Candler v Heigho,* 208 Mich 115, 121; 175 NW 141 (1919).]

[4] The Court noted, however, that "a fraudulent misrepresentation may be based upon a promise made in bad faith without intention of performance." *Hi-Way Motor Co,* 398 Mich 337-338. It also explained that future promises can form the basis of an action for breach of contract.

conclusion that the defendant's advertisements contained only promises regarding future events:

> The statement at issue here refers to the existence of security provided for defendant's patrons in its parking lot. This was a statement of fact, concerning conditions in existence at the time made, not a promise for future security to be provided. Nor do we believe the statement constituted an expression of opinion or "puffing." *Van Tassel v McDonald Corp,* 159 Mich App 745; 407 NW2d 6 (1987). Defendant went beyond expressing an opinion that its parking lot was "safe." Instead, defendant made reference to "security," indicating some form of protection was in fact offered to patrons. Defendant's statement therefore was a statement of fact. [192 Mich App 145.]

For those reasons, the Court of Appeals set aside the summary disposition entered by the circuit court on both counts of the plaintiff's amended complaint.

IV

The defendant applied for leave to appeal. Observing that the circuit court had not ruled upon the defendant's motion for summary disposition under MCR 2.116(C)(10), we remanded the case to the circuit court, while retaining jurisdiction. The circuit court was instructed to hear and decide the motion. 442 Mich 882 (1993).

After considering the submissions of the parties, the circuit court ruled that, with regard to both counts of the plaintiff's amended complaint, summary disposition should enter under MCR 2.116(C)(10). The case has now returned here, for further consideration of the defendant's application for leave to appeal.

V

We noted in *Williams* that questions regarding duty are for the court to decide as a matter of law.[5] 429 Mich 500. While a jury ordinarily decides questions regarding reasonable care, those also are to be determined by the court as a matter of law where there are overriding concerns of public policy. 429 Mich 500-501. For reasons grounded in public policy, 429 Mich 500-504, we then held in *Williams* that a merchant is not ordinarily required to protect customers from the criminal acts of third persons:

> We conclude as a matter of law that the duty of reasonable care that a merchant owes his invitees does not extend to providing armed, visible security guards to protect customers from the criminal acts of third parties. The merchant is not an insurer of the safety of his invitees, and for reasons of public policy he does not have the responsibility for providing police protection on his premises. [429 Mich 504.]

In the present case, the plaintiff seeks to avoid the rule of *Williams* by relying on the principle that a person who voluntarily undertakes a responsibility can be held liable if the volunteer's negligence is a proximate cause of injury.[6] The plaintiff also attempts to assert an action for fraud.

To the extent that this defendant voluntarily assumed any obligations, the exact terms of its undertaking were explicitly stated in its advertising. It promised parking that was (a) free,

[5] Our opinion in *Williams* also included a discussion of the obligations of invitors and others to persons who enter their premises. 429 Mich 498-500.

[6] See, generally, *Smith v Allendale Mutual Ins Co,* 410 Mich 685; 303 NW2d 702 (1981).

(b) ample, (c) lighted, and (d) guarded.[7] In his amended complaint, the plaintiff seeks to infer from the advertising that the defendant also volunteered, more generally, to exercise reasonable care to provide a safe parking lot.[8] The plaintiff maintains that these voluntarily assumed obligations were breached, giving rise to liability for fraud and for negligent breach of the duties.

Examining the plaintiff's complaint, one finds that the defendant's lot was lighted and fenced. Further, the parking was evidently free and ample, since the plaintiff was able to park in the lot and does not allege a fee.

Thus there were only two respects in which the plaintiff asserted a breach of the defendant's representations. First, he alleged that the defendant "did fail to provide security personnel to keep the lighted fenced parking lot in a 'secure' and safe condition for its patrons, contrary to Defendant's express representations." However, the owner of the defendant corporation stated in his deposition testimony that three security guards were present that evening. Indeed, the plaintiff stated in his own deposition testimony that a security guard was present at the lot when he arrived and was there to assist him after he was shot.[9]

---

[7] There appears to be agreement that the words "security parking" meant that the parking lot would be attended by one or more private security guards. Whether the words additionally implied that the parking lot would be free of criminal activity is disputed by the parties.

[8] As noted above, the plaintiff's amended complaint also includes the assertion that, through its advertising, the defendant voluntarily assumed a duty to provide (not just attempt to provide) a safe parking lot. However, the advertising contains no such claim and, in today's society, no reasonable person could expect a merchant to provide a haven guaranteed to be completely free of all criminal activity. *Williams,* 429 Mich 502.

[9] The plaintiff testified that he did not see the guard as he walked from the club to his car, but there is no testimony in the record that the guard was absent, improperly engaged, or otherwise derelict in

Second, the principal allegation of his amended complaint is that "the Defendant did breach its duty to the Plaintiff by failing to provide adequate security to make the parking lot safe, failing to implement adequate security procedures to keep the lot free of criminal activity, and allowing an armed assailant to be present in its parking lot, without any attempts being made by security personnel to prevent, or warn of, said assault."[10]

But the defendant did not advertise that it would "make the parking lot safe" or provide a "lot free of criminal activity"—it never claimed the ability or the intention to create an environment that was guaranteed to be free of crime. The defendant instead advertised specific security measures designed (a) to decrease the likelihood of crime, and (b) correspondingly to decrease the anxiety felt by patrons. Indeed, because the defendant put in place each promised security measure, it is reasonable to assume that the defendant *did* reduce the incidence of crime in its parking area.

Common sense is required in approaching a case like this. A promise to take specific steps to reduce danger is a promise to do just that—not a promise to eliminate the danger. Manufacturers of safety equipment, for instance, normally promise, expressly or by implication, that the danger of injury will be *reduced*—rarely, if ever, do they promise that all danger of injury will be eliminated.[11] Likewise, neither this defendant's advertising nor the

his duties. Neither is it alleged that the guard (or any other agent of the defendant corporation) knew of the assailant's presence, but failed to intervene timely or properly.

[10] We agree with the Court of Appeals that the plaintiff's estoppel theory is, on these facts, a variant of his claim that the defendant voluntarily assumed duties that were breached in this case.

[11] See, generally, *Westry v Bell Helmets, Inc,* 194 Mich App 366; 487 NW2d 781 (1992).

measures it put in place constituted a guarantee of the plaintiff's personal safety.[12]

We also note the plaintiff's allegation that he was "induced to relax his normal vigilance," with the "result" that he was assaulted and injured.[13] This assertion was significant to the Court of Appeals, which recited, "plaintiff has alleged defendant increased the risk of harm by advertising secure parking, thereby causing patrons, including plaintiff, to be less wary of criminal activity." If this theory of causation and liability were accepted, the defendant's advertising would be an unnecessary detail in this case—any observable security measure might cause diminished vigilance.

We reject the notion that a merchant who makes property visibly safer has thereby "increased the risk of harm" by causing patrons to be less anxious. In 1988, we held in *Williams* that a merchant ordinarily has no obligation to provide security guards or to protect customers against crimes committed by third persons. Today, we decline to adopt a theory of law under which a merchant would be effectively obliged *not* to take such measures.[14]

Thus we agree with the analysis offered in *Tame,* upon which the circuit court relied in granting summary disposition. In *Tame,* the Court of

[12] In light of the public policy considerations discussed in *Williams,* a promise to guarantee the personal safety of another cannot be inferred from circumstances or from ambiguous representations. (We do not limit a person's right to contract, in clear language, to provide bodyguard service or personal security to another.)

[13] In his deposition, the plaintiff did not claim that he patronized the club because of the representations regarding parking, but he said again that he relaxed his vigilance while in the defendant's parking lot.

[14] Likewise, providing a measure of security does not oblige a merchant to continue the practice. *Lee v Borman's, Inc,* 188 Mich App 665; 478 NW2d 653 (1991); *Theis v Abduloor,* 174 Mich App 247; 435 NW2d 440 (1988).

Appeals "decline[d] to adopt a policy that imposes liability on a merchant who, in a good faith effort to deter crime, fails to prevent all criminal activity on its premises." It said that "[s]uch a policy would penalize merchants who provide some measure of protection, as opposed to merchants who take no such measures." 177 Mich App 457.

The Court of Appeals returned to this area in *Rhodes v United Jewish Charities of Detroit*, 184 Mich App 740; 459 NW2d 44 (1990). The Court held that a party voluntarily undertaking to provide protection must do so in a nonnegligent manner, and said that the question in *Rhodes*, whether a guard was negligent in the performance of his duties, was a question for the jury. However, *Rhodes* is silent regarding the manner in which the guard was alleged to have been negligent. To the extent that *Rhodes* implies that an agreement to provide security is an actionable warranty that the guarded area will be safe from all criminal activity, it is inconsistent with Michigan law.

The central holding of *Williams* is that merchants are ordinarily not responsible for the criminal acts of third persons. The present suit is an attempt to circumvent that holding by invoking the principle that a person can be held liable for improperly discharging a voluntarily undertaken function. However, the rule of *Williams* remains in force, even where a merchant voluntarily takes safety precautions.[15] Suit may not be maintained on the theory that the safety measures are less effective than they could or should have been.[16]

---

[15] In *Holland v Liedel*, 197 Mich App 60; 494 NW2d 772 (1992), the Court of Appeals affirmed a verdict in favor of a tenant who was assaulted in the parking area of her apartment building. We reserve our opinion regarding the application, in the area of landlord-tenant law, of the principles discussed in the present case.

[16] For example, the plaintiff complained in the papers filed on remand that the defendant made no provision for the guards to take

The principles explained in *Williams* likewise lead us to hold that an action for fraud cannot be grounded on the facts of this case. The defendant provided all that it advertised. It did not advertise a crime-free haven from ordinary life, and public policy would render unenforceable any such promise unless it were both reasonable and entirely explicit.

VI

For the reasons stated in this opinion, summary disposition under MCR 2.116(C)(8) was properly granted on all aspects of the plaintiff's amended complaint, except those based upon the specific allegation that the defendant failed to provide security personnel. That allegation was challenged by the defendant's motion for summary disposition under MCR 2.116(C)(10), and summary disposition was appropriate under that paragraph of the court rule, in light of the deposition testimony of the plaintiff and others.

We reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court. MCR 7.302(F)(1).

CAVANAGH, C.J., and BRICKLEY, BOYLE, RILEY, GRIFFIN, and MALLETT, JJ., concurred.

LEVIN, J. (*dissenting*). I would deny leave to appeal.

breaks or use the bathroom, and that there thus existed a potential for the lot to be unguarded. We offer no view regarding other factual situations that might arise, such as where an important safety measure is specifically promised and is entirely absent, and injury is proximately caused thereby. However, we emphasize the core holding of *Williams:* Merchants are not responsible for maintaining public order or preventing crime.

I

Harper Recreation advertised "Free Ample Lighted Security Parking."[1] The majority argumentatively construes this language[2] stating:

—that this does not mean that Harper Recreation promised to "provide a *haven guaranteed* to be *completely free* of *all* criminal activity."[3] (Emphasis added.)

—Harper Recreation "did not advertise that it would 'make the parking lot *safe*' or provide a 'lot *free* of criminal activity.' "[4] (Emphasis added.)

—Harper Recreation "never claimed the ability or the intention to create an environment that was *guaranteed* to be *free* of crime."[5] (Emphasis added.)

---

[1] The defendant, Harper Recreation, Inc., doing business as Club UBQ, filed a motion for summary disposition under MCR 2.116(C)(8) and (10).

A motion under subrule (C)(10) asserts that there is "no genuine issue as to any material fact." Such a motion "must specifically identify the issues as to which the moving party believes there is no genuine issue." "Affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted" are "required" when judgment is sought on the basis of subrule (C)(10). MCR 2.116(G)(3) and (4).

Although subrule (C)(10) was mentioned in the motion for summary disposition, the motion did not assert the absence of a "genuine issue as to any material fact." Nor did the motion "specifically identify" any issue about which it was claimed there was no genuine issue. Nor was the motion supported by affidavits, depositions, admissions, or other documentary evidence.

[2] The majority's decision is contrary to the following rule of law:

Where a contract is to be construed by its terms alone, it is the duty of the court to interpret it, but where its meaning is obscure, and its construction depends upon other and extrinsic facts in connection with what is written, the question of interpretation must be submitted to the jury. [75A Am Jur 2d, Trial, § 802, pp 407-408.]

See *People v Austin,* 301 Mich 456; 3 NW2d 841 (1942).

[3] *Ante,* p 449, n 8.

[4] *Ante,* p 450.

[5] *Id.*

—"[N]either this defendant's advertising nor the measures it put in place constituted a *guarantee* of the plaintiff's *personal safety.*"[6] (Emphasis added.)

—Harper Recreation "did not advertise a *crime-free haven* from ordinary life . . . ."[7] (Emphasis added.)

Scott did not claim, however, that Harper Recreation promised him the equivalent of secret service protection. He claimed, rather, that Harper Recreation failed "to provide *adequate* security to make the parking lot safe" and to "implement *adequate* security procedures to keep the lot free of criminal activity . . . ." (Emphasis added.)

II

To the extent the allegations in Scott's complaint overstate an appropriate and fair construction of what would constitute "Free Ample Lighted Security Parking," Scott is entitled to an opportunity on remand from the Court of Appeals or this Court to file an amended complaint restating his claim so that the complaint alleges, e.g., that Harper Recreation failed "to provide adequate security *to* make the parking lot [*reasonably*] safe" and to "implement adequate security procedures to keep the lot [*reasonably*] free of criminal activity."

It appears that Scott, in his amended complaint filed before summary disposition was granted, alleged an *express* undertaking to exercise reasonable care, and that the majority's characterization of his complaint—as alleging a promise to "provide a *haven guaranteed* to be *completely free* of *all*

[6] *Ante,* pp 450-451.

[7] *Ante,* p 453.

criminal   activity"—is   inaccurate.[8]   (Emphasis added.)

### III

The majority reads *Rhodes v United Jewish Charities of Detroit,* 184 Mich App 740; 459 NW2d 44 (1990), as stating "that a party voluntarily undertaking to provide protection must do so in a nonnegligent manner."[9] That statement finds sup-

---

[8] The complaint alleged:

19. That by virtue of the Defendant's undertaking to provide a "secure" parking lot, the Defendant assumed a duty to its patrons to *exercise reasonable care* to provide same.

[9] The syllabus prepared by the Reporter of Opinions for *Rhodes* reads as follows:

Janice Rhodes brought an action in Wayne Circuit Court against United Jewish Charities of Detroit (UJC), Jewish Vocational Services and Community Workshop (JVS), Guardian Guard Services, James Crawford and Anthony King. Plaintiff alleged that she was assaulted by King in a fenced and guarded parking lot owned by UJC adjacent to a building in which UJC leased space to JVS and plaintiff's employer. Plaintiff further alleged that, under the terms of the lease agreement between UJC and JVS, JVS was obligated to provide security on the lot, and that JVS contracted with Guardian for security services. The court, Thomas J. Foley, J., granted summary disposition against plaintiff on her claims of negligence by UJC, JVS and Guardian. The court also denied plaintiff leave to amend her complaint to allege that she was a third-party beneficiary of the contract between UJC and JVS. Plaintiff appealed.

The Court of Appeals held:

1. When a person voluntarily assumes the performance of a duty, that person is required to perform it carefully, not omitting to do what an ordinarily prudent person would do in accomplishing the task. Here, when UJC and JVS voluntarily assumed the duty of providing protection in the form of guards from Guardian, it became incumbent upon them to provide that protection in a manner that was not negligent. Because the question of negligence was properly one for the jury, the trial court erred in granting summary disposition.

2. Because it can properly be argued that plaintiff was a third-party beneficiary of the contract between UJC and JVS, plaintiff shall, on remand, be granted leave to amend her complaint.

Reversed and remanded.

port in the Restatement:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise *reasonable care* to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.[10] [Emphasis added.]

I find nothing in *Rhodes*—which speaks in terms of providing protection in a "nonnegligent manner"—that justifies the following statement in the majority opinion:

> To the extent that *Rhodes implies* that an agreement to provide security is an actionable warranty that the guarded area will be safe from *all* criminal activity, it is inconsistent with Michigan law.[11] [Emphasis added.]

IV

Harper Recreation did not contend, either formally, in its motion papers, or informally, in its brief, that there was an absence of a genuine issue of material fact on the factual issue whether it had failed to provide security personnel.

Harper Recreation did not in the trial court or in the Court of Appeals contend that Scott's deposition testimony established "that a security guard

---

10 Restatement Torts, 2d, § 323, p 135.

11 *Ante,* p 452.

was present at the lot when he arrived and was there to assist him after he was shot."[12]

Because there has been no trial, and a motion under subrule (C)(10) was not properly filed,[13] the majority errs in making the following findings of fact:

—"the defendant put in place each promised security measure";[14]

—"[t]he defendant provided all that it advertised."[15]

The majority also errs in stating ex cathedra that public policy requires that it pronounce a crimped and stingy construction of "Free Ample Lighted Security Parking."[16]

V

The majority states:

Suit may not be maintained on the theory that the safety measures are less effective than they could or should have been.[16]

---

[16] . . . We offer no view regarding other factual situations that might arise, such as where an important safety measure is specifically promised and is entirely absent, and injury is proximately caused thereby. However, we emphasize the core holding of *Williams* [*v Cunningham Drug Stores,* 429 Mich 495; 418 NW2d 381 (1988)]: Merchants are not responsible for maintaining public order or preventing crime.[17]

---

[12] *Ante,* p 449.

[13] See n 1.

[14] *Ante,* p 450.

[15] *Ante,* p 453.

[16] The majority states:

It did not advertise a crime-free haven from ordinary life, and public policy would render unenforceable any such promise unless it were both reasonable and entirely explicit. [*Ante,* p 453.]

[17] *Ante,* p 452.

Reading the foregoing text and footnote together, it appears that the majority has made a factual determination, even though there has been no trial, and a motion under subrule (C)(10) was not properly filed.[18] In recognition that a motion under subrule (C)(10) was not properly filed, the majority should not decide "in light of the deposition testimony of the plaintiff and others" "the specific allegation that the defendant failed to provide security personnel,"[19] and should not preclude Scott from establishing at trial that Harper Recreation did not provide "safety measures" it agreed to provide.

## VI

This Court cannot properly rule, *as a matter of law,* that Harper Recreation provided security personnel simply because a security guard was present at the lot when Scott arrived and may have been there to "assist" him after he was shot, if the security guard was not, in fact, on duty in the interim during which Scott made his way from the building to his automobile and was shot. That is not to say that the security guard had, as a matter of law, to be on duty every second. It is to say, however, that the whereabouts of the security guard during the interim—and whether, in the words of the majority, "an important safety measure [was] specifically promised and [was] entirely absent"[20]—are factual questions that cannot properly be resolved by this Court as a matter of law without any focus on them at the trial level.

[18] See n 1.
[19] *Ante,* p 453.
[20] *Ante,* p 452, n 16.

VII

Today's decision is violative of the procedures established in the court rules requiring that a party filing a motion under subrule (C)(10)

—assert that there is "no genuine issue as to any material fact"—Harper Recreation did not so assert;

—"specifically identify the issues as to which the moving party believes there is no genuine issue" (subrule [G][4])—Harper Recreation did not so specifically identify an issue;

—support the motion with "affidavits, depositions, admissions, [or] other documentary evidence" (subrule [G][5])—Harper Recreation did not so support its motion; all it did was state that it's motion was based on subrule (C)(10) as well as (C)(8) and nothing more.

Today's decision is not only violative of the procedures established in the court rules. The decision deprives Scott of an opportunity to respond to the argument, put forth for the first time when this per curiam opinion was circulated, that the admission on deposition that a security guard was present at the lot when Scott arrived and was there to assist him after he was shot, bars, as a matter of law, any factual response through the testimony of any witness or witnesses that might tend to establish that the security guard had been absent for a considerable period of time before the assault and was, in reality, "entirely absent." *Ante,* p 452, n 16.

Footnote 9 of the majority opinion states: "there is no testimony in the record that the guard was absent, improperly engaged, or otherwise derelict in his duties." A different question would be presented if Harper Recreation had "specifically" identified, as subrule (C)(10) requires, as an issue

about which it believed there was no genuine issue, the issue whether the security guard "was absent, improperly engaged, or otherwise derelict in his duties." Because Harper Recreation did not so specifically identify such an issue, Scott cannot be faulted, and Harper Recreation cannot properly prevail, because there is "no testimony in the record" in that regard.

### VIII

Peremptory disposition, without plenary consideration, full briefing, oral argument, and an opportunity for the profession to file briefs as amici curiae, should be reserved for cases in which the law is settled and factual assessment is not required.[21] In the instant case, as indicated in the

[21] *People v Wright,* 439 Mich 914, 914-915 (1992) (LEVIN, J., dissenting); *Roek v Chippewa Valley Bd of Ed,* 430 Mich 314, 322; 422 NW2d 680 (1988) (LEVIN, J., separate opinion); *Grames v Amerisure Ins Co,* 434 Mich 867, 868-875 (1990) (LEVIN, J., dissenting); *People v Little,* 434 Mich 752, 769-770; 456 NW2d 237 (1990) (LEVIN, J., dissenting); *People v Wrenn,* 434 Mich 885, 885-886 (1990) (LEVIN, J., dissenting); *Harkins v Northwest Activity Center, Inc,* 434 Mich 896, 899 (1990) (LEVIN, J., dissenting); *Dep't of Social Services v American Commercial Liability Ins Co,* 435 Mich 508, 515; 460 NW2d 194 (1990) (LEVIN, J., separate opinion); *Yahr v Garcia,* 436 Mich 872 (1990) (LEVIN, J., dissenting); *Universal Underwriters Ins Co v Vallejo,* 436 Mich 873, 873-874 (1990) (LEVIN, J., dissenting); *People v Stephens,* 437 Mich 903, 903-910 (1991) (LEVIN, J., dissenting); *People v Berkey,* 437 Mich 40, 54; 467 NW2d 6 (1991) (LEVIN, J., dissenting); *Turner v Washtenaw Co Rd Comm,* 437 Mich 35, 38-39; 467 NW2d 4 (1991) (LEVIN, J., separate opinion); *Lepior v Venice Twp,* 437 Mich 955, 956-966 (1991) (LEVIN, J., dissenting); *Rochester Hills v Southeastern Oakland Co Resource Recovery Authority,* 440 Mich 852, 852-856 (1992) (LEVIN, J., dissenting); *In re Reinstatement of Eston (Grievance Administrator v Eston),* 440 Mich 1205, 1205-1207 (1992) (LEVIN, J., dissenting); *In re Reinstatement of Callanan,* 440 Mich 1207, 1207-1209 (1992) (LEVIN, J., dissenting); *McFadden v Monroe Civil Service Comm,* 440 Mich 890, 890-891 (1992) (LEVIN, J., dissenting); *Holly Twp v Dep't of Natural Resources (Holly Twp v Holly Disposal, Inc),* 440 Mich 891, 891-893 (1992) (LEVIN, J., dissenting); *Marzonie v ACIA,* 441 Mich 522, 535-539; 495 NW2d 788 (1992) (LEVIN, J., dissenting); *People v Waleed,* 441 Mich 902, 902-903 (1992) (LEVIN, J., dissenting); *People v Hardison,* 441 Mich 913, 914-916 (1993) (LEVIN, J., dissenting); *People v Justice,* 441 Mich 916, 917-919 (1993) (LEVIN, J., dissenting).

majority opinion, factual and legal assessment is
required. Peremptory disposition is not appropriate.

Leave to appeal should be denied.

See *Schweiker v Hansen,* 450 US 785, 791; 101 S Ct 1468; 67 L Ed
2d 685 (1981) (Marshall, J., dissenting) ("A summary reversal is a rare
disposition, usually reserved by this Court for situations in which the
law is settled and stable, the facts are not in dispute, and the decision
below is clearly in error"); *Leis v Flynt,* 439 US 438, 457-458; 99 S Ct
698; 58 L Ed 2d 717 (1979) (Stevens, J., dissenting) ("Summary
reversal 'should be reserved for palpably clear cases of . . . error.'
*Eaton v Tulsa,* 415 US 697, 707 [94 S Ct 1228; 39 L Ed 2d 693 (1974)]
[Rehnquist, J., dissenting]").