*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN WHEELER,

Plaintiff-Appellant,

v

BUSCH'S INC., and SIMSBURY F/14 LLC,

Defendants-Appellees.

UNPUBLISHED
November 19, 2019

No. 344496
Oakland Circuit Court
LC No. 2017-156740-NO

Before: M. J. KELLY, P.J., and FORT HOOD and SWARTZLE, JJ.

PER CURIAM.

Plaintiff, John Wheeler, slipped and fell on ice in a parking lot. He sued defendants Simsbury F/14 LLC, the owner of the parking lot, and Busch's Inc., the operator of the adjacent grocery store, seeking damages related to his injuries. Because the grocery store did not exercise possession and control over the parking lot, it owed plaintiff no duty to keep the parking lot free of ice. Because reasonable minds could not differ regarding whether other indicia of a potentially hazardous condition existed so as to put a reasonable person on notice of the presence of black ice in the parking lot, the condition was open and obvious. Therefore, the trial court correctly granted summary disposition to both defendants.

## I. BACKGROUND

On January 11, 2014, at about 10:00 a.m., plaintiff drove to the grocery store a short distance from his home. Temperatures were ranging above and below the freezing mark, causing snow and ice to melt and refreeze. Plaintiff testified that, when he left home for the grocery store, it was warmer than a typical January day and that it was either raining or misting, causing him to use the windshield wipers of his Chevrolet Tahoe. Although snow remained on the ground from an earlier snowfall, plaintiff's driveway and the roads were merely wet, and plaintiff did not notice any ice or slippery conditions on the drive. When he arrived in the parking lot, plaintiff parked two or three parking spaces away from the main doors to the grocery store. Although he did not observe snow or ice on the surface of the lot where the cars were parked, he did observe mounds of snow surrounding the parking lot. Plaintiff believed that the surface of the parking spot in which he parked his vehicle was wet, as was every parking spot he

could see that morning. As plaintiff stepped out of his vehicle, he immediately slipped and fell. Once he was on the ground, plaintiff determined that he had slipped on ice.

Plaintiff went inside the grocery store and spoke with Alan Preis, the guest-services manager for Busch's. Plaintiff informed Preis that he had fallen, and Preis stated that he had called the owner of the parking lot twice that morning to request that it spread salt. Preis offered to call an ambulance if plaintiff was hurt, but plaintiff refused medical attention. After plaintiff completed his grocery shopping, he photographed the location in which he fell and then he drove himself home. Plaintiff admitted that he never took Preis out to the parking lot to show him the location where he fell.

Preis completed an incident report that same day. On the incident report, Preis stated that the weather conditions were "Cloudy and dry" and that the parking lot was "wet from the snow and ice melting." The incident report also contained a box labeled "Videos/Photos." Within that box, the following language appears: "Video of area available? Unsure" and "Photos (Must be taken and sent to Dan Wagner at Corp. 1043): Taken after the removal of the hazard." It is unclear from the record whether Preis typed the words "Taken after the removal of the hazard" or whether those words were preprinted on the incident-report form. At his deposition, Preis stated that, although it was standard procedure to take photographs whenever a customer fell, he did not recall taking any photographs of the location in the parking lot where plaintiff slipped and fell.

Preis also stated that Busch's was only responsible for removing snow and salting ice on the sidewalk immediately adjacent to the front door of the grocery store. He indicated that Busch's was not responsible for salting the parking lot; it was the responsibility of Simsbury to do so when necessary. Despite the fact that Preis called Simsbury and requested salting before plaintiff's fall, records produced in the trial court indicated that Simsbury did not spread salt in the parking lot until almost midnight on January 11, 2014—approximately 14 hours after plaintiff's fall.

Plaintiff filed this lawsuit against defendants, alleging that both defendants exercised possession and control over the parking lot and that they had failed to maintain the premises in a reasonably safe condition. After discovery, plaintiff filed a motion seeking an adverse-inference instruction as set forth in M Civ JI 6.01. Plaintiff argued that Busch's had failed to maintain potential evidence that might have been relevant to his slip and fall. Specifically, plaintiff argued that Busch's failed to maintain photographs allegedly taken by Preis, surveillance video of the parking lot, and written "sweep logs" that detailed when employees of Busch's shoveled and salted the sidewalk outside the store entrance.

Plaintiff requested that the trial court instruct the jury that (1) the evidence was under Busch's control, (2) the evidence could have been produced by Busch's, (3) no reasonable excuse for Busch's failure to produce the evidence was given, and (4) the jury was permitted to infer that the evidence would have been adverse to Busch's. See M Civ JI 6.01(a). In the alternative, plaintiff requested that the trial court instruct the jury that (1) the evidence was under Busch's control, (2) the evidence could have been produced by Busch's, and (3) the jury was permitted to infer that the evidence would have been adverse to Busch's, if the jury found that no

reasonable excuse for Busch's failure to produce the evidence had been shown. See M Civ JI 6.01(c).

Regarding the alleged photographs of the location in the parking lot where plaintiff fell, the record does not demonstrate that such photographs ever existed. As explained earlier, plaintiff never took Preis out into the parking lot to show him the location where he fell, and Preis did not recall taking any photographs. Plaintiff relies on the incident report as proof that Preis did take photographs "after the removal of the hazard." Yet, plaintiff presented no testimony that any employee of Busch's removed the black ice after his fall. Indeed, plaintiff's evidence indicated that Simsbury did not salt the parking lot until 14 hours after his fall. And, even if Preis did take photographs, the incident report indicates that he took them *after* the removal of the black ice. Therefore, any such photographs would not have shown the conditions that caused plaintiff's fall.

Regarding the alleged surveillance video, there is no evidence that Busch's ever possessed video of the area where plaintiff fell. Although plaintiff argues that Busch's had video cameras outside its store, he did not produce any evidence regarding the location of the video cameras or the portion of the parking lot covered by those cameras.

Regarding the alleged "sweep logs," Preis indicated that the grocery store kept a log in which its employees recorded hazards both inside and just outside the store, including cleanup activities such as shoveling snow and salting ice. Yet, Preis also stated that employees of Busch's did not shovel snow or salt ice in the parking lot, but only did so on the sidewalk at the store entrance. Therefore, there is no evidence in the record to indicate that the "sweep logs," even if produced, would have documented an effort by employees of Busch's to salt the parking spot where plaintiff fell.

The trial court held a hearing on plaintiff's motion for an adverse-inference instruction and entered an order denying the motion—without prejudice—for the reasons stated by the trial court at the motion hearing. Plaintiff chose not to order the transcript of that hearing and it is not available to this Court as part of the record on appeal. Therefore, the trial court's reasons for denying the motion are unclear.

Defendants filed a motion for summary disposition under MCR 2.116(C)(10). Both defendants argued that they were entitled to summary disposition because the ice on which plaintiff slipped and fell was open and obvious. In addition, Busch's argued that it was entitled to summary disposition because it did not exercise possession and control over the parking lot. In support of that argument, Busch's produced the lease agreement between defendants, under which Busch's leased the building but not the parking lot. The lease granted Busch's use of the parking lot as a common area, but imposed no responsibilities on Busch's for care or maintenance of the lot.

With regard to its claims against Simsbury, plaintiff argued that the black ice on which he slipped and fell was not an open-and-obvious condition because there was no snow covering the ice. Plaintiff also argued that whether the dangers presented by the black ice were open and obvious should be left to the jury to decide. With regard to its claims against Busch's, plaintiff argued that "it's possible that Busch's was responsible for salting the area" in which plaintiff

-3-

parked because he parked his vehicle only "two or three spaces" away from the store's entrance. Yet, plaintiff pointed to no record evidence that Busch's ever salted or otherwise attempted to maintain the area of the parking lot in which he fell. Instead, because Busch's did not produce any "sweep logs" for the date of his slip and fall, plaintiff argued that he was entitled to a jury instruction "that the sweep logs would demonstrate that Busch's took it upon itself to salt the area" in which plaintiff parked his vehicle, and that this adverse inference required denial of Busch's motion for summary disposition.

Regarding plaintiff's claims against Busch's, the trial court held that it "did not own, lease or rent the parking lot where Plaintiff fell and did not have a contractual obligation to maintain the parking lot." Based on its determination that Busch's "did not have possession or control of the parking lot," it held that plaintiff could not establish that Busch's owed him any duty. Regarding plaintiff's claims against Simsbury, the trial court held that conditions "such as the presence of snow and winter temperatures that make freezing and melting likely would have alerted an ordinary user of the possibility of black ice" and that there was no "special aspect leading to liability despite the open and obvious nature of the hazard." Therefore, the trial court granted summary disposition in favor of both defendants.

Plaintiff now appeals.

## II. ANALYSIS

### A. NO DUTY FOR THE ADJACENT BUSINESS

Plaintiff first argues that the trial court erroneously granted summary disposition in favor of Busch's. Because there is no genuine issue of material fact that Busch's did not exercise possession and control over the parking lot in which plaintiff slipped and fell, it owed plaintiff no duty to keep the parking lot free of ice. Furthermore, plaintiff has failed to come forward with sufficient evidence to create a genuine issue of material fact regarding whether Busch's assumed a duty to keep the parking lot in a safe condition. Therefore, the trial court properly granted summary disposition in favor of Busch's.

This Court reviews de novo a trial court's decision on a motion for summary disposition under MCR 2.116(C)(10). *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *El-Khalil v Oakwood Healthcare, Inc*, __ Mich __, __; __ NW2d __ (2019) (Docket No. 157846); slip op at 6. Summary disposition is only appropriate when there is no genuine issue of material fact. *Id*. "[Q]uestions regarding duty are for the court to decide as a matter of law." *Scott v Harper Recreation, Inc*, 444 Mich 441, 448; 506 NW2d 857 (1993).

As our Supreme Court stated in *Hoffner v Lanctoe*, 492 Mich 450; 821 NW2d 88 (2012):

> The starting point for any discussion of the rules governing premises liability law is establishing what duty a premises possessor owes to those who come onto his land. With regard to invitees, a landowner owes a duty to use reasonable care to protect invitees from unreasonable risks of harm posed by dangerous conditions on the owner's land. Michigan law provides liability for a

-4-

breach of this duty of ordinary care when the premises possessor knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect. [*Id.* at 460 (citations omitted).]

In this case, there is no dispute that plaintiff was an invitee, defined as a person who enters upon another's land upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises and make it safe for the invitee's reception. *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596-597; 614 NW2d 88 (2000). Because plaintiff was an invitee, the landowner had

a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards. Thus, an invitee is entitled to the highest level of protection under premises liability law. [*Id.* at 597 (citations omitted).]

Busch's moved for summary disposition of plaintiff's claims against it, arguing that it did not own and was in neither possession nor control of the parking lot in which plaintiff fell. The trial court held that Busch's did not own, lease, or rent the parking lot and did not have any contractual obligation to maintain the parking lot. Therefore, the trial court held that Busch's owed plaintiff no duty to warn of known dangers or to keep the parking lot free of ice. On appeal, plaintiff does not challenge the trial court's ruling that Busch's did not own, lease, or rent the parking lot and that it had no contractual obligation to maintain it. Yet, plaintiff argues that Busch's nonetheless assumed a duty to keep the parking lot in a safe condition for invitees because Busch's might have sometimes voluntarily maintained that portion of the parking lot where plaintiff slipped and fell.

"Under the principles of premises liability, the right to recover for a condition or defect of land requires that the defendant have legal possession and control of the premises." *Morrow v Boldt*, 203 Mich App 324, 328; 512 NW2d 83 (1994). Here, plaintiff's argument fails because there is simply no evidence in the record that Busch's exercised possession and control of the parking lot. The undisputed testimony is that Busch's employees salted the sidewalk in front of the store, but did not salt the adjacent parking lot. There is no question of fact on this issue. Plaintiff has failed to come forward with evidence sufficient to create a genuine issue of material fact that Busch's exercised possession and control of the parking lot or that employees of Busch's salted the portion of the parking lot where plaintiff fell. Therefore, Busch's owed plaintiff no duty to protect him from the dangers of black ice in the parking lot.

Plaintiff argues that, in the absence of evidence that Busch's exercised possession and control of the parking lot, the trial court should have applied an adverse inference against Busch's, based on the absence of photographic and documentary evidence that plaintiff claims was in Busch's control. When a party deliberately destroys evidence, or fails to produce it, courts presume that the evidence would operate against the party who destroyed it or failed to produce it. *Johnson v Secretary of State*, 406 Mich 420, 440; 280 NW2d 9 (1979). It is well settled, however, "that missing evidence gives rise to an adverse presumption only when the

complaining party can establish intentional conduct indicating fraud and a desire to destroy evidence and thereby suppress the truth." *Ward v Consol Rail Corp*, 472 Mich 77, 84-85; 693 NW2d 366 (2005) (cleaned up).

Here, plaintiff argued that Busch's pictures, purportedly taken after the removal of the hazard, "would have or may have provided a very different take on the scene" compared to plaintiff's photos. Plaintiff also argued that the surveillance video would have provided confirmation that plaintiff had been observant of his surroundings as he was exiting his vehicle, such that he would have seen the black ice if it was observable. Finally, plaintiff argued that the sweep logs "might well have confirmed that there was black ice in the parking lot that needed to be treated with salt." Plaintiff summarized his argument by stating, "We can only be left to guess what this material evidence would have shown based on Busch's failure to first preserve and then produce it to [plaintiff] which is a clear basis for the adverse inference instruction against Busch's requested here." This argument fails, however, to meet the standard of demonstrating a deliberate destruction of evidence or intentional conduct indicating fraud and a desire to destroy evidence and thereby suppress the truth.

Plaintiff also argued in the trial court that "it's possible that Busch's was responsible for salting the area" in which plaintiff parked his vehicle because he parked only "two or three spaces" away from the store's entrance, and that the "sweep logs" from the day of the incident might have shown that employees of Busch's salted that portion of the parking lot. Plaintiff's leap in logic is unsupported by the evidence. It is undisputed that plaintiff parked not on the sidewalk outside the store entrance, but in the parking lot. It is also undisputed that employees of Busch's only maintained the sidewalk outside the store entrance, but not the parking lot. There is simply nothing in the record to support plaintiff's argument, and plaintiff is not entitled to an adverse inference based on Busch's failure to produce the documents in question.

To be clear, plaintiff does not directly challenge the trial court's denial of its motion for an adverse-inference instruction. Rather, plaintiff argues that the trial court was required to apply the adverse inference to its analysis of defendants' motions for summary disposition and that the adverse inference, once applied, created a genuine issue of material fact regarding whether Busch's exercised possession and control over the parking lot. Yet, plaintiff has cited no Michigan precedent indicating that a trial court must apply an adverse inference when ruling on a party's motion for summary disposition. Furthermore, plaintiff failed to order the transcript of the trial-court hearing on his motion for the adverse-inference instruction. Without a proper record of proceedings to review, it is impossible for this Court to discern the trial court's reasons for denying plaintiff's motion for an adverse-inference instruction. Therefore, plaintiff has failed to demonstrate entitlement to the adverse inference in the context of the trial court's summary-disposition ruling.

## B. THE BLACK ICE WAS OPEN AND OBVIOUS

Plaintiff next argues that the trial court erroneously granted summary disposition in favor of Simsbury, the owner of the parking lot in which plaintiff slipped and fell. Because reasonable minds could not differ regarding whether other indicia of a potentially hazardous condition existed so as to put a reasonable person on notice of the presence of black ice in its parking lot,

the condition on which plaintiff slipped and fell was open and obvious, and the trial court correctly granted summary disposition to Simsbury.

Although "landowners must act in a reasonable manner to guard against harms that threaten the safety and security of those who enter their land," it is also true that "landowners are not insurers; that is, they are not charged with guaranteeing the safety of every person who comes onto their land." *Hoffner*, 492 Mich at 459. Furthermore, a landowner has no duty to protect or warn an invitee of open and obvious conditions "because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Id*. at 460-461. "Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon a casual inspection." *Id*. at 461. This test is objective, with the proper inquiry being "whether a reasonable person in the plaintiff's position would have foreseen the danger, not whether the particular plaintiff knew or should have known that the condition was hazardous." *Slaughter v Blarney Castle Oil Co*, 281 Mich App 474, 478-479; 760 NW2d 287 (2008).

In *Slaughter*, this Court surveyed case law regarding the open-and-obvious doctrine and the phenomena known as black ice, which by its nature is difficult to observe absent other indicators of slippery conditions. *Id*. at 479-481. The situation involved in *Slaughter* was the presence of black ice without the presence of snow, a situation that had not resulted in a published decision with respect to the open-and-obvious doctrine. *Id*. at 477, 481. This Court held in the case before it that a question of fact remained whether the black ice was open and obvious because "there was no snow on the ground, and it had not snowed in a week," and the mere facts that it was wintertime and the pavement was wet were insufficient to render the hazard open and obvious as a matter of law. *Id*. at 483-484. But this Court set forth a rule of general application to similar cases that black ice may be an open-and-obvious hazard when there is evidence it "would have been visible on casual inspection before the fall or . . . other indicia of a potentially hazardous condition" was present, such as "the circumstances and specific weather conditions present at the time of [the] plaintiff's fall." *Id*. at 483.

Our Supreme Court in *Janson v Sajewski Funeral Home, Inc*, 486 Mich 934; 782 NW2d 201 (2010), adopted the *Slaughter* rule. In that case, The Supreme Court reversed this Court because we failed apply the precedent of *Slaughter* that " 'black ice' conditions [are] open and obvious when there are 'indicia of a potentially hazardous condition,' including the 'specific weather conditions present at the time of the plaintiff's fall.' " *Id*., quoting *Slaughter*, 281 Mich App at 483. Further, the Court held that the black ice in *Janson* was open and obvious because

> the slip and fall occurred in winter, with temperatures at all times below freezing, snow present around the defendant's premises, mist and light freezing rain falling earlier in the day, and light snow falling during the period prior to the plaintiff's fall in the evening. These wintry conditions by their nature would have alerted an average user of ordinary intelligence to discover the danger upon casual inspection. [*Id.* at 935.]

Here, the trial court ruled that there was no genuine issue of material fact and that the black ice on which plaintiff slipped and fell was an open-and-obvious condition. In reaching that conclusion, the trial court relied on the presence of snow on the ground surrounding the parking

lot and changes in winter temperatures that made freezing and melting likely. The trial court determined that these factors "would have alerted an ordinary user of the possibility of black ice" and concluded that there was no "special aspect leading to liability despite the open and obvious nature of the hazard." We conclude that the trial court did not err by finding that the undisputed facts showed that the alleged black ice was open and obvious because there were sufficient " 'indicia of a potentially hazardous condition,' including the 'specific weather conditions present at the time of the plaintiff's fall.' " *Slaughter*, 281 Mich App at 483.

Although the black ice was open and obvious, a property possessor still has a duty to take reasonable precautions to protect invitees from even open-and-obvious dangers "if special aspects of a condition make even an open and obvious risk unreasonably dangerous." *Lugo v Ameritech Corp*, 464 Mich 512, 517; 629 NW2d 384 (2001). "Special aspects" exist in two circumstances: "when the danger is *unreasonably dangerous* or when the danger is *effectively unavoidable*." *Hoffner*, 492 Mich at 463 (emphasis in original). These principles apply as equally to snowy or icy conditions as to any other condition of land. *Id*. at 463-464; *Corey v Davenport College of Business (On Remand)*, 251 Mich App 1, 4, 8-9; 649 NW2d 392 (2002). In this case, the trial court ruled that there was no "special aspect leading to liability despite the open and obvious nature of the hazard." Plaintiff does not challenge this ruling on appeal. We conclude that the trial court did not err by finding from the undisputed facts that the black ice did not have any special aspect that made it unavoidable or uniquely dangerous.

Affirmed. Defendants, having prevailed in full, may tax costs under MCR 7.219(F).


/s/ Karen M. Fort Hood
/s/ Brock A. Swartzle