**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JUNE 26, 2001**

MOLLY MACDONALD,

    Plaintiff-Appellee,

v                               No. 114039

PKT, INC, known as PINE KNOB MUSIC
THEATER, and ARENA ASSOCIATES,
jointly and severally,

    Defendants-Appellants,

and

CAPITAL CITIES/ABC, INC,

    Defendant.

---

STEPHEN L. LOWRY,

    Plaintiff-Appellant,

v                               No. 115322

CELLAR DOOR PRODUCTIONS OF MICHIGAN,
INC, a Michigan corporation, and
ARENA ASSOCIATES INC, d/b/a PINE
KNOB MUSIC THEATER, jointly and
severally,

    Defendants-Appellees.

---

BEFORE THE ENTIRE BENCH

YOUNG, J.

## I. INTRODUCTION

In these consolidated premises liability cases, plaintiffs seek to recover for injuries they suffered when fellow concertgoers at the Pine Knob Music Theater (Pine Knob), an outdoor amphitheater that offered seating on a grass-covered hill, began pulling up and throwing pieces of sod. We granted leave to address the duty of premises owners concerning the criminal acts of third parties.

Under *Mason v Royal Dequindre, Inc*, 455 Mich 391; 566 NW2d 199 (1997), merchants have a duty to respond reasonably to situations occurring on the premises that pose a risk of imminent and foreseeable harm to identifiable invitees. We hold today that the duty to respond is limited to reasonably expediting the involvement of the police and that there is no duty to otherwise anticipate and prevent the criminal acts of third parties. Finally, consistent with *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495; 418 NW2d 381 (1988), and *Scott v Harper Recreation, Inc*, 444 Mich 441; 506 NW2d 857 (1993), we reaffirm that merchants are not required to provide security personnel or otherwise resort to self help in order to deter or quell such occurrences.

## II. Factual and Procedural Background

### A. *MacDonald*

In *MacDonald*, plaintiff Molly MacDonald attended a concert on May 4, 1995, at Pine Knob at which several bands were performing. Pine Knob offers seating on a grass-covered hill, as well as seating in a pavilion. Plaintiff received the tickets to the concert as part of a promotional giveaway by a local radio station sponsoring the concert. When

2

plaintiff arrived at Pine Knob, she and a friend found a spot to sit on the hill. While a band called Bush was performing, some patrons began pulling up sod and throwing it.

Before the concert, the event coordinator had asked the bands to stop performing in the event that the audience members began throwing sod, and announce that the sod throwing must stop. There were also flyers posted in the dressing rooms of the bands requesting the bands to make an announcement to the audience to stop throwing sod. Pursuant to that request, the band finished the song and stopped performing, making an announcement that unless the sod throwing stopped, the concert would not continue. The crowd complied with the band's request, and several individuals were ejected from Pine Knob for throwing sod.

While the next band, the Ramones, was performing, the sod throwing resumed. After that band refused to make an announcement to stop throwing sod, the event coordinator turned on the house lights. When the sod throwing continued, the band made an additional announcement demanding that it stop. Once again, several individuals who were involved in throwing sod were ejected from the theater. During the second incident of sod throwing, plaintiff fractured her ankle when she fell while attempting to avoid being struck by a piece of sod. Discovery materials indicated that there had been two sod-throwing incidents at previous concerts at Pine Knob, one incident in 1991, at a Lollapalooza concert, and another

3

incident in 1994, at a Metallica concert.[1]

Plaintiff filed a complaint against, among others, PKT, Inc., also known as Pine Knob Music Theater and Arena Associates.[2] Plaintiff alleged that Pine Knob was negligent in failing to provide proper security, failing to stop the performance when it should have known that continuing the performance would incite the crowd, failing to screen the crowd to eliminate intoxicated individuals, and by selling alcoholic beverages. Pine Knob moved for summary disposition, arguing that it did not have a duty to protect plaintiff from the criminal acts of third parties. Meanwhile, plaintiff moved to amend her complaint to add certain theories including design defect, nuisance, and third-party beneficiary claims and to more specifically set forth her negligence claim.

The trial court granted summary disposition for Pine Knob pursuant to MCR 2.116(C)(8) and (10), but the Court of Appeals reversed.[3] The Court of Appeals held that the trial court erred in granting summary disposition in favor of Pine Knob because there were fact questions for the jury regarding whether the sod throwing incident created a foreseeable risk of harm and whether the security measures taken by Pine Knob

---

[1]The 1994 sod-throwing incident resulted in the lawsuit at issue in *Lowry*.

[2]Although not fully explained by the parties, apparently Pine Knob Music Theater and Arena Associates is one entity. Capital Cities/ABC, Inc., the owner of the radio station that sponsored the concert, was dismissed as a party defendant from the case early on and is not a party to this appeal.

[3]233 Mich App 395; 593 NW2d 176 (1999).

4

were reasonable. The Court of Appeals reasoned that plaintiff submitted evidence that there had been incidents of sod throwing at previous concerts, that Pine Knob was aware of those instances, and that it had formulated policies to deal with sod throwing incidents before the concert. Regarding the question whether security measures taken by Pine Knob were reasonable, the Court of Appeals stated that plaintiff presented evidence sufficient to survive summary disposition by submitting the affidavit of an expert witness who stated that Pine Knob was negligent by (1) failing to have adequately trained security personnel properly positioned at the concert,[4] (2) failing to summon the police to eject or arrest those throwing sod, (3) failing to have a clear, written policy regarding the sod throwing, (4) allowing the concert to continue after the first incident, and (5) serving alcohol.

Finally, the Court of Appeals held that the trial court abused its discretion in denying plaintiff's motion to amend her complaint pursuant to MCR 2.116(I)(5). The Court of Appeals stated that the proposed claims were legally sufficient and were justified by the evidence. This Court granted Pine Knob's application for leave to appeal.[5]

B. *LOWRY*

In *Lowry*, plaintiff and a friend attended a Suicidal Tendencies/Danzig/Metallica concert at Pine Knob on June 22,

---

[4]Approximately forty security officers and eleven officers from the Oakland County Sheriff's Department were working at the concert.

[5]461 Mich 987 (2000).

5

1994.  Plaintiff suffers from multiple sclerosis and uses the aid of two canes or a wheelchair.  Plaintiff was seated in the handicapped section at Pine Knob, which is located at the rear of the pavilion immediately adjacent to the grass seating.  During the performance of Danzig, patrons seated on the lawn of Pine Knob began throwing sod.  Plaintiff was allegedly struck with sod on the head and shoulders.  Within a few minutes, the band stopped performing and an announcement was made requiring individuals to stop or the concert would not continue.  Alcohol sales were cut off.  Deposition testimony indicated that the sod throwing stopped within ten to fifteen minutes and numerous individuals were ejected from Pine Knob.[6]

Plaintiff brought a negligence action against Pine Knob, as well as Cellar Door Productions of Michigan, Inc., the producer of the concert, alleging that defendants failed to protect plaintiff from the foreseeable dangers of sod throwing by patrons. Plaintiff also alleged that defendants violated his rights under the Michigan Handicapper's Civil Rights Act (MHCRA), (now: Persons With Disabilities Civil Rights Act), MCL 37.1101 *et seq.*, by failing to adequately  accommodate his disability.

Defendants moved for summary disposition under MCR 2.116(C)(8) and (10), arguing that they owed no duty to protect plaintiff from the criminal acts of third parties, and that plaintiff's handicap was fully accommodated.  With regard

---

[6]Approximately seventy crowd control personnel, as well as officers from the Oakland County Sheriff's Department, were present at the concert.

to plaintiff's premises liability claim, the trial court granted summary disposition for defendants on the ground that the sod throwing was unforeseeable and that defendants took reasonable measures to protect their patrons. The trial court also granted summary disposition for defendants on plaintiff's handicapper discrimination claim, holding that defendants provided plaintiff with full and equal utilization of the facilities.

The Court of Appeals affirmed in an unpublished per curiam decision.[7] As an initial matter, the Court of Appeals noted that both the parties and the trial court had failed to recognize that because Cellar Door was not the owner of the premises, it could not have been negligent under a premises liability theory.[8] By implication, the Court also held that Cellar Door could not have violated plaintiff's rights under the MHCRA. With regard to Pine Knob, the Court of Appeals held that it owed no duty to protect plaintiff because it was unforeseeable as a matter of law that the crowd would throw sod at plaintiff during the concert. In that respect, the Court of Appeals found that the instant case was factually distinguishable from *MacDonald* because (1) unlike *MacDonald*, in the instant case there was no evidence whatsoever that defendants had formulated a specific policy to deal with sod throwing incidents, (2) the sod throwing incident in this case

---

[7]Issued June 8, 1999 (Docket No. 206875).

[8]Plaintiff does not challenge this aspect of the Court of Appeals decision. Accordingly, we deem plaintiff to have abandoned his claims against Cellar Door.

7

occurred before the incident in *MacDonald,* and (3) in *MacDonald*, the plaintiff was injured during the *second* occurrence of sod throwing during the same concert, whereas in this case, there were no incidents of sod throwing during the prior evening's performance that involved the same bands. The Court of Appeals also held that Pine Knob fully accommodated plaintiff's disability.

One panel member dissented in part, arguing that "[a]lthough plaintiff did not present evidence regarding the number of previous sod throwing incidents or the dates and circumstances surrounding those previous occurrences, plaintiff nonetheless established the existence of a genuine issue of material fact with respect to whether the sod throwing incident at issue in this case was foreseeable." The dissent further suggested that the reasonableness of Pine Knob's conduct with respect to protecting the patrons with disabilities from injuries should have been submitted to a jury.

This Court granted plaintiff's application for leave to appeal.[9]

### III. STANDARD OF REVIEW

We review de novo a trial court's decision to grant or deny summary disposition. *The Herald Co v Bay City*, 463 Mich 111, 117; 614 NW2d 873 (2000). A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the complaint and allows consideration of only the

---

[9]461 Mich 987 (2000).

8

pleadings. *Wade v Dep't of Corrections*, 439 Mich 158, 162; 483 NW2d 26 (1992). The motion should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. *Id.* at 163.

A motion for summary disposition pursuant to MCR 2.116 (C)(10) tests the factual support of a claim. *Smith v Globe Life Ins Co,* 460 Mich 446, 454; 597 NW2d 28 (1999). The motion should be granted if the evidence demonstrates that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. *Id.* at 454-455, quoting *Quinto v Cross & Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996).

### IV. THE DUTIES OF A MERCHANT

We recognized in *Mason* the general rule that merchants "do not have a duty to protect their invitees from unreasonable risks that are unforeseeable." *Id*. at 398. Accordingly, we held that a duty arises only on behalf of those invitees that are "'readily identifiable as [being] foreseeably endangered.'" *Id.*, quoting *Murdock v Higgins*, 454 Mich 46, 58; 559 NW2d 639 (1997). We further held that the measures taken must be reasonable. *Mason* at 405. In the instant cases, we are called upon to further clarify the duty that we articulated in *Mason*.

*Mason* and its companion case, *Goodman v Fortner*, both involved altercations that began in bars. In *Mason*, one of the plaintiff's friends, Dan Kanka, was involved in an altercation with another man, Thomas Geoffrey. The plaintiff

9

was in a different area of the bar when the fight began, and only witnessed its conclusion. The bar's bouncers immediately ejected Geoffrey and, in an attempt to avoid more conflict, instructed Kanka to remain until Geoffrey left the premises. When the plaintiff left the bar some time later, Geoffrey assaulted him in the parking lot, breaking his nose and jaw. *Id*. at 393-394. We upheld the dismissal of the plaintiff's resulting premises liability claim on the ground that, because the plaintiff was not near the area where the initial fight occurred (and the defendant had no knowledge that the plaintiff was associated with either Kanka or Geoffrey), the defendant had no reason to believe that the plaintiff was in danger. Even viewed in a light most favorable to the plaintiff, we held that the facts did not support a finding that the attack on the plaintiff was foreseeable. *Id*. at 404.

In *Goodman*, the plaintiff's girlfriend, Theresa Woods, was involved in a bar room scuffle with the plaintiff's former girlfriend and mother of his child, Joslynn Lewis. The fight continued in the parking lot and then moved back inside the bar, with two of Lewis' relatives joining the fray. Despite repeated requests that they call the police, the bar's bouncers refused, although they did remove Lewis and her group from the bar. When the plaintiff and Woods attempted to leave the bar, Lewis and her friends were waiting out in the parking lot, yelling at the plaintiff and threatening to kill him. There was evidence that the bouncers standing at the door could undoubtedly hear the commotion. One of Lewis' friends eventually shot the plaintiff in the chest. *Id*. at 395-396.

10

We upheld a jury verdict in the plaintiff's favor on the ground that a reasonable jury could find that the harm to the plaintiff was foreseeable. We also held that a reasonable jury could find that the defendant did not take reasonable steps to prevent the plaintiff's injury. *Id*. at 404-405.

As we made clear in *Williams* and *Scott*, a merchant has no obligation generally to anticipate and prevent criminal acts against its invitees. Indeed, as the Court of Appeals panel in *Lowry* correctly noted, we have never recognized as "foreseeable" a criminal act that did not, as in *Goodman*, arise from a situation occurring on the premises under circumstances that would cause a person to recognize a risk of imminent and foreseeable harm to an identifiable invitee. Consequently, a merchant's only duty is to *respond* reasonably to such a situation. To hold otherwise would mean that merchants have an obligation to provide what amounts to police protection, a proposition that we soundly rejected in both *Williams* and *Scott*.[10] To the extent that, in *Goodman*, we relied upon evidence of previous shootings at the bar in assessing whether a reasonable jury could find that the *Goodman* plaintiff's injury was foreseeable, we now disavow that analysis as being flatly inconsistent with *Williams* and *Scott*.

---

[10]*Mason* cited § 344 of 2 Restatement of Torts, 2nd, and comment f to § 344, which indicate that a merchant has a duty to take precautions against the criminal conduct of third persons that may be reasonably anticipated. We overrule that portion of *Mason* as conflicting with *Williams* and *Scott*.

11

A premises owner's duty is limited to responding reasonably to situations occurring on the premises because, as a matter of public policy, we should not expect invitors to assume that others will disobey the law. A merchant can assume that patrons will obey the criminal law. See *People v Stone*, 463 Mich 558, 565; 621 NW2d 702 (2001), citing Prosser & Keeton, Torts (5th ed) § 33, p 201; *Robinson v Detroit*, 462 Mich 439, 457; 613 NW2d 307 (2000); *Buzckowski v McKay*, 441 Mich 96, 108, n 16; 490 NW2d 330 (1992); *Placek v Sterling Hts*, 405 Mich 638, 673, n 18; 275 NW2d 511 (1979). This assumption should continue until a specific situation occurs on the premises that would cause a reasonable person to recognize a risk of imminent harm to an identifiable invitee. It is only a present situation on the premises, not any past incidents, that creates a duty to respond.

Subjecting a merchant to liability solely on the basis of a foreseeability analysis is misbegotten. Because criminal activity is irrational and unpredictable, it is in this sense invariably foreseeable everywhere. However, even police, who are specially trained and equipped to anticipate and deal with crime, are unfortunately unable universally to prevent it. This is a testament to the arbitrary nature of crime. Given these realities, it is unjustifiable to make merchants, who not only have much less experience than the police in dealing with criminal activity but are also without a community deputation to do so, effectively vicariously liable for the criminal acts of third parties.

12

Having established that a merchant's duty is to respond reasonably to criminal acts occurring on the premises, the next question is what is a reasonable response? Ordinarily, this would be a question for the factfinder. However, in cases in which overriding public policy concerns arise, this Court may determine what constitutes reasonable care. See *Williams, supra* at 501, citing *Moning v Alfono*, 400 Mich 425, 438; 254 NW2d 759 (1977). Because such overriding public policy concerns exist in the instant cases, the question of reasonable care is one that we will determine as a matter of law. *Williams, supra* at 501. We now make clear that, as a matter of law, fulfilling the duty to respond requires only that a merchant make reasonable efforts to contact the police. We believe this limitation is consistent with the public policy concerns discussed in *Williams*.

In *Williams, supra*, the plaintiff was shopping in the defendant's store when an armed robbery occurred. As the plaintiff, a store patron, attempted to flee, the robber shot him. The plaintiff sued the defendant store, alleging that it breached its duty to exercise reasonable care in part by not providing armed and visible security guards for the security of the store's patrons. *Id*. at 497. This Court held that a merchant's duty of reasonable care does not include providing armed, visible security guards to deter criminal acts of third parties. *Id*. at 501. We reasoned that such a duty is vested in the government alone, and that to shift the burden to the private sector "would amount to advocating that members of the public resort to self-help. Such a proposition contravenes

13

public policy." *Id*. at 503-504. We further explained that

> [t]o require defendant to provide armed, visible security guards to protect invitees from criminal acts in a place of business open to the general public would require defendant to provide a safer environment on its premises than its invitees would encounter in the community at large. Defendant simply does not have that degree of control and is not an insurer of the safety of its invitees. [*Id*. at 502.]

The rationale of this Court in *Williams* for not requiring merchants to provide security guards to protect invitees from the criminal acts of third parties is the same rationale for not imposing on merchants any greater obligation than to reasonably expedite the involvement of the police. That is, the duty to provide police protection is vested in the government. *Williams, supra* at 501. To require a merchant to do more than take reasonable efforts to expedite the involvement of the police, would essentially result in the duty to provide police protection, a concept that was rejected in *Williams*.[11] Merchants do not have effective control over situations involving spontaneous and sudden incidents of criminal activity. On the contrary, control is precisely what has been lost in such a situation.[12] Thus, to impose an obligation on the merchant to do more than take reasonable efforts to contact the police is at odds with the public policy principles of *Williams*.

---

[11]A merchant may voluntarily do more than reasonably attempt to notify the police. However, we hold today, that a merchant is under no legal obligation to do so.

[12]In most instances, other than merely being the owner of the business being victimized, the merchant and invitee will be situated in roughly the *same* position in terms of their vulnerability to the violent criminal predator.

14

In *Scott*, *supra* at 452, we expanded on this theme by holding that, even where a merchant voluntarily takes safety precautions in an effort to prevent criminal activity, "[s]uit may not be maintained on the theory that the safety measures are less effective than they could or should have been." Consequently, in any case in which a factfinder, be it the trial court or a jury, will be assessing the reasonableness of the measures taken by a merchant in responding to an occurrence on the premises, a plaintiff may not present evidence concerning the presence or absence of security personnel, or the failure to otherwise resort to self-help, as a basis for establishing a breach of the merchant's duty. A jury thus must be specifically instructed in accordance with the principles of *Williams* and *Scott* as we have outlined them here.

To summarize, under *Mason*, generally merchants "have a duty to use reasonable care to protect their identifiable invitees from the foreseeable criminal acts of third parties." *Id*. at 405. The duty is triggered by specific acts occurring on the premises that pose a risk of imminent and foreseeable harm to an identifiable invitee. Whether an invitee is readily identifiable as being foreseeably endangered is a question for the factfinder if reasonable minds could differ on this point. See *id*. at 404-405. While a merchant is required to take reasonable measures in response to an ongoing situation that is taking place on the premises, there is no obligation to otherwise anticipate the criminal acts of third parties. Consistent with *Williams*, a merchant is not

15

obligated to do anything more than reasonably expedite the involvement of the police. We also reaffirm that a merchant is not required to provide security guards or otherwise resort to self help in order to deter or quell such occurrences. *Williams, supra.*

### V.  APPLICATION

#### A.  *MACDONALD*

The Court of Appeals in *MacDonald* held that plaintiff presented sufficient evidence to create a genuine issue of material fact concerning whether the harm to her was foreseeable. We agree that plaintiff created a jury-submissible issue concerning whether she was readily identifiable as being foreseeably endangered once the sod throwing began. However, we reject the Court of Appeals reliance on incidents previous to the day in question as a basis for concluding that sod throwing was "foreseeable" in this instance. The *Mason* duty, as clarified here, is not based upon the general question whether a criminal act was foreseeable, but, rather, once a disturbance occurs on the premises, whether a reasonable person would recognize a risk of imminent harm to an identifiable invitee. As stated, a merchant has no obligation to anticipate the criminal acts of third parties.

The Court of Appeals also held that a genuine issue of material fact exists concerning whether Pine Knob took reasonable measures in response to the sod throwing. We disagree. Because Pine Knob already had the police present at the concert, Pine Knob fully discharged its duty to respond.

16

Thus, we reverse the Court of Appeals decision denying Pine Knob's motion for summary disposition and reinstate the trial court's decision to grant summary disposition for Pine Knob pursuant to MCR 2.116(C)(8) and (10).

We also reverse the Court of Appeals decision that the trial court abused its discretion in denying plaintiff's motion to amend her complaint to add certain theories including design defect, nuisance, and third-party beneficiary claims and to more specifically set forth her negligence claim. We conclude that plaintiff's amendment would have been futile.

## B. *LOWRY*

In contrast with *MacDonald*, the Court of Appeals panel in *Lowry* relied solely on the *absence* of evidence concerning previous incidents of sod throwing to uphold the trial court's decision granting summary disposition for Pine Knob. This too was error. Whether Pine Knob could have anticipated that sod throwing would be a problem does not answer the legally relevant question whether plaintiff Lowry was foreseeably endangered once sod throwing began on the day of plaintiff's attendance. However, in accordance with this opinion, because Pine Knob already had the police at the concert, we hold that Pine Knob had no further obligation. Pine Knob discharged its duty to respond by having police present once the sod throwing began. Thus, we affirm the Court of Appeals affirmance of the trial court's decision to grant summary disposition in favor of Pine Knob. We also affirm the Court of Appeals decision to uphold summary disposition in Pine Knob's favor on plaintiff's

17

handicapper discrimination claim. We agree that Pine Knob fully accommodated plaintiff's disability.

### VI. RESPONSE TO THE DISSENT

The dissent accuses us of "uproot[ing] the entire basis for imposing a duty on merchants to protect their invitees that we expressed in *Mason* . . . ." Slip op, pp 4-5. We disagree.

The principal difference between the dissent and the majority lies in our respective attempts to reconcile our several premises liability cases and the policies that undergird them. The dissent seeks in effect to limit or ignore the holdings of *Williams* and *Scott.* The majority refuses to do so.

In its effort to explain away the tort duty policy choices this Court adopted in *Williams* and *Scott*, the dissent reads into *Mason* rationales and holdings the dissent would have liked *Mason* to have adopted but which that opinion plainly did not embrace.

We believe that the actual policy rationales of *Williams* and *Scott* must be reconciled with the merchant's duty set forth in *Mason.* In reconciling these cases, we seek to establish a clear rule. We reject the premises liability rule that the dissent proposes because (1) it provides little guidance to any premises owner concerning its obligations under law and (2) despite its claims to the contrary, the dissent's rule would unfairly expose merchants in high-crime areas to excessive tort liability and increase the pressure on

18

commercial enterprises to remove themselves from our troubled urban and high-crime communities. *Mason* undeniably cites 2 Restatement Torts, 2d, § 344, and comment f.[13] However, in quoting that section and comment of the restatement, the *Mason* majority did *not* "recognize" the imposition of a duty on a merchant to protect its invitees from criminal conduct of third parties as being "contingent upon whether the character of his business, or past experience . . . gives the merchant knowledge or reason to know that those acts may occur again." Slip op, p 4. Other than in the text of the restatement, the "character of the merchant's business" is not even discussed

[13]The dissent cannot seriously suggest that the mere quotation of comment f of the Restatement in *Mason* constituted an adoption of it. Comment f explicitly provided that a premises owner's duty encompasses the responsibility to "provide a reasonably sufficient number of servants to afford a reasonable protection" against the criminal acts of third parties. This proposition was flatly rejected in both *Williams* and *Scott*. See *Williams* at 502-503 and *Scott, supra*. Nevertheless, "this Court is not, nor is any other court, bound to follow any of the rules set out in the Restatement." *Rowe v Montgomery Ward*, 437 Mich 627, 652; 473 NW2d 268 (1991). "[T]he application of a common-law rule to a particular set of facts does not turn on whether those facts can be characterized in the language of the Restatement." *Smith v Allendale Mutual Ins Co*, 410 Mich 685, 712-13; 303 NW2d 702 (1981). While the drafters of the Restatements "may sometimes strive to choose 'the better rule' or to predict or shape the development of the law, its influence *depends upon its persuasiveness*." *Id*. at 713 (emphasis added).

> Even where a particular Restatement section has received specific judicial endorsement, cases where that section is invoked *must be decided by reference to the policies and precedents underlying the rule restated*. Textual analysis of the Restatement is useful only to the extent that it illuminates these fundamental considerations. [*Id*. (emphasis added).]

Further, our rejection of § 344, and comment f, is consistent with the overriding public policy concerns discussed in this opinion.

in *Mason*.  Nor did we "implicitly note" in *Mason* that a careful consideration of the facts in each case, namely, the nature of the harm, etc., is essential in determining whether a § 344 analysis is justified.  Thus, the dissent ingeniously injects concepts into *Mason* that clearly were not adopted by the *Mason* court.

The dissent attempts to distinguish *Williams* from *Mason* and the instant cases by explaining that *Williams* involved "random crime" "*unrelated* to the character of the merchant's business", slip op, p 8, and asserting that the sod-throwing incidents in these cases were "related" to Pine Knob's business because the nature of the harm was created by the "character" of its business.  We do not agree with the dissent's focus on the "randomness" or spontaneity of a criminal act as being a relevant factor in determining whether an occurrence was foreseeable.  The key inquiry is not whether the criminal act was "random," but rather whether, as stated in *Mason*, the merchant has reason to recognize a risk of imminent harm to an identifiable invitee.  In *Williams*, the merchant had no reason to expect the criminal attack.  In *Mason*, we distinguished *Williams* and *Scott* by explaining that in *Williams* and *Scott* "[t]he merchants had had no previous contact with the assailants and could not have determined that the plaintiffs were in danger."  *Mason, supra* at 402.  The rule set forth in this opinion is thus consistent with *Mason* as well as *Williams* and *Scott*:  A merchant should not be

20

expected to anticipate *any* type of criminal activity, whether "random" or otherwise, *before* there is some specific activity on the premises creating a foreseeable risk of imminent harm to an identifiable invitee.[14]  The merchant then must make efforts to notify those deputized to deal with such circumstances: the police.

Moreover, none should be mistaken that the test of "relatedness" proposed by the dissent would apply, if not now, then very soon, to virtually *all* criminal acts in commercial establishments.  It cannot be questioned that there can always be, given crime's unfortunate pervasiveness, a plausible argument that the criminal being drawn to the business enterprise at all makes it "related" in such a way as to trigger liability.[15]  Surely after one crime has occurred on the premises, or even in a similar business, with the criminal

---

[14]*Mason* distinguished *Williams* by analyzing the merchant's ability to foresee *imminent* harm, i.e., awareness of a situation.  However, as articulated in this opinion, we would not go so far as to consider specific prior incidents, as that would conflict with the general proposition in *Williams* and *Scott* that merchants are "ordinarily" not legally responsible to patrons and others on their premises for the criminal acts of third parties, as well as the premise that a merchant can assume that others will obey the criminal law until they actually do otherwise.  See slip op, pp 11-13.

[15]The "relatedness" test proposed by the dissent states:

> If the nature of the harm is random and spontaneous, and thus unrelated to the character of the merchant's business, the merchant cannot be expected to foresee its occurrence, and reference to prior similar occurrences is not justified.  If the nature of the harm was created by the character of the merchant's business, reference to prior similar occurrences is justified because a merchant can be expected to foresee such harm happening again, in light of his prior experience with such acts.  Slip op, p 8.

21

having been arguably drawn to that business, the "relatedness" test will be met. Indeed, probably even more attenuated linkages (the crime rate in the area comes to mind) will suffice, as the law develops, to establish "relatedness." This will all mean, and it was this the *Williams* and *Scott* courts understood, that urban merchants will be exposed to crippling tort liability.

Thus, the dissent's rule would have its most pernicious and devastating effect on the many commercial businesses that are located in Michigan's urban and high-crime areas. Avoiding this kind of adverse effect was one of the Court's primary concerns when it adopted the *Williams* and *Scott* principles.[16] It simply cannot be gainsaid that businesses in urban and high-crime areas do foresee that criminals may attack their establishments—opportunistically or with premeditation. Indeed, the fact that many businesses in our

---

[16]Imposing liability on the business owner, poses the threat that businesses may move away from high crime areas. See Homant & Kennedy*, Landholder Responsibility for Third Party Crimes in Michigan: An Analysis of Underlying Legal Values*, 27 U Tol L Rev 115, 147 (1995). See also *McNeal v Henry*, 82 Mich App 88, 90, n 1; 266 NW2d 469 (1978), stating:

> In the majority of urban communities, both large and small businesses could not bear the heavy insurance burden which would be required to protect against this extraordinary kind of liability. Some of our big cities have more than their share of destructive and violent persons, young and old, who roam through downtown department stores and other small retail businesses stealing and physically abusing legitimate patrons. Guards are placed in the stores but those activities continue. We fear that to hold businessmen liable for the clearly unforeseeable third-party torts and crimes incident to these activities would eventually drive them out of business.

urban and high-crime areas erect barriers to protect their employees is ample proof that they *actually* anticipate crime occurring in their establishments. Plainly stated, their precautions give proof that they understand that criminal acts in their establishments are not "random" as the dissent would understand it, but rather are foreseeable risks related to the business.

For these policy reasons, we, as the courts before us, decline to adopt the dissent's proposed rule.

VII. CONCLUSION

Consistent with our decisions in *Williams*, *Scott,* and *Mason*, we conclude that merchants have a duty to respond reasonably to situations occurring on the premises that pose a risk of imminent and foreseeable harm to identifiable invitees. We hold that the duty to respond is limited to reasonably expediting the involvement of the police, and that there is no duty to otherwise anticipate the criminal acts of third parties. Finally, we reaffirm that merchants are not required to provide security personnel or otherwise resort to self-help in order to deter or quell such occurrences.

In *MacDonald*, we reverse the Court of Appeals decision denying summary disposition. In *Lowry*, the decision of the Court of Appeals to grant summary disposition for Pine Knob is affirmed.

CORRIGAN, C.J., and WEAVER, TAYLOR, and MARKMAN, JJ., concurred with YOUNG, J.

23

**S T A T E   O F   M I C H I G A N**

**SUPREME COURT**

MOLLY MACDONALD,

    Plaintiff-Appellee,

v                                       No. 114039

PKT, INC, known as PINE KNOB MUSIC
THEATER, and ARENA ASSOCIATES,
jointly and severally,

    Defendants-Appellants,

and

CAPITAL CITIES/ABC, INC,

    Defendant.

_____

STEPHEN L. LOWRY,

    Plaintiff-Appellant,

v                                       No. 115322

CELLAR DOOR PRODUCTIONS OF MICHIGAN,
INC, a Michigan corporation, and
ARENA ASSOCIATES INC, d/b/a PINE
KNOB MUSIC THEATER, jointly and
severally,

    Defendants-Appellees.

_____

CAVANAGH, J. (*dissenting*).

    The majority holds that under *Mason v Royal Dequindre, Inc*, 455 Mich 391; 566 NW2d 199 (1997), a merchant has a duty to "respond reasonably to situations occurring on the premises that pose a risk of imminent and foreseeable harm to identifiable invitees," and the duty to respond entails nothing more than the merchant's attempt to contact the

police.  Slip op at 2.  This artful formulation of the *Mason* duty removes any inquiry into prior similar occurrences as part of the foreseeability analysis, reducing the foreseeability question to whether a merchant should have known that an ongoing occurrence on the premises could have harmed an identifiable invitee.  Because the majority created this formulation of the *Mason* duty with brazen disregard for the principles that created it, I respectfully dissent.

I

In *Mason*, we had to determine whether merchants have a common-law duty to protect their patrons from criminal acts of third parties.  To resolve this question, we examined the rationale behind imposing a duty on a person to protect another person endangered by a third party's conduct.  Generally, a person has no duty to protect another person endangered by a third party's conduct unless there is a special relationship between those persons.  The reason for this exception to the general no-duty rule when a special relationship is present is based on control.  As we explained, "In each situation one person entrusts himself to the control and protection of another, with a consequent loss of control to protect himself.  The duty to protect is imposed upon the person in control because he is best able to provide a place of safety."  *Mason* at 398.  Thus, while merchants are not insurer's of their invitees' safety, we recognized that courts will impose a duty on a merchant to protect its invitees, like the duty imposed when a special relationship is present, when they are "readily identifiable as [being] foreseeably

2

endangered." *Id.* at 398, quoting *Murdock v Higgins*, 454 Mich 46, 58; 559 NW2d 639 (1997).

After exploring the basis for imposing a duty on a merchant to protect its invitees, we explained that these same principles are embodied in 2 Restatement Torts, 2d, § 344, pp 224-225, and comment f to § 344, pp 225-226. The Restatement further explains how control and foreseeability govern a landowner's liability to its invitees. Section 344 provides:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
>
> (a) discover that such acts are being done or are likely to be done, or
>
> (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Comment f to § 344 states:

> Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

3

In quoting § 344 and comment f, we recognized that the imposition of a duty on a merchant to protect its invitees from criminal conduct of third parties is contingent upon whether the character of his business, or past experience either in general or at a specific time, gives the merchant knowledge or reason to know that those acts may occur again. As noted in the quoted sections of the Restatement, this analysis includes a consideration of whether such acts had occurred in the past.

Following these premises liability principles, we held that "merchants can be liable in tort for failing to take reasonable measures to protect their invitees from harm caused by the criminal acts of third parties. The harm must be foreseeable to an identifiable invitee and preventable by the exercise of reasonable care." *Id.* at 393. Clearly, our holding in *Mason* was premised on tort principles that require a look into the character of the merchant's business and prior similar occurrences to determine whether the harm is foreseeable.

The majority introduces a version of the *Mason* duty that ignores the basis of our holding in *Mason* and instead holds that under *Mason*, a merchant has a duty to respond to ongoing frays on the premises, and the duty is only to make an effort to contact the police. This formulation essentially uproots the entire basis for imposing a duty on merchants to protect their invitees that we expressed in *Mason* by extinguishing the consideration of the character of the merchant's business and prior similar occurrences when deciding if the harm was

4

foreseeable.  Instead, the majority limits the foreseeability question to whether this particular fray would have harmed this particular plaintiff, without citing any legal support for its decision to alter the duty.

In reformulating the *Mason* duty, the majority overrules *Mason* to the extent that it relied on § 344 and comment f of the Restatement which clearly refutes the majority's clarified version of the *Mason* duty.  Slip op at 13, n 10.  The reason the majority states for overruling this part of *Mason* is that § 344 and comment f are contrary to our holding in *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495; 418 NW2d 381 (1988).  In *Williams*, we stated that merchants are not ordinarily responsible for criminal acts of third parties because it is against public policy to require a merchant to anticipate crime in the community that may harm its invitees. The majority claims that the only way to reconcile *Williams* with the *Mason* holding that a merchant may be liable when the criminal act that harmed its invitee was foreseeable is to say that a merchant only has a duty to "respond reasonably to such a situation."  Slip op at 12-13. Furthermore, the majority concludes that the duty entails only making an effort to contact the police because *Williams* prevents the imposition of any further act.  The majority fails to recognize, however, that a new formulation of the *Mason* duty is not necessary in light of *Williams* because we  distinguished *Williams* when we decided *Mason*.

According to the majority, *Williams* closed the door to applying § 344 when deciding whether a merchant has a duty to

5

protect its invitees from criminal acts because merchants cannot anticipate crime. A close reading of *Williams*, however, reveals that is not true. In *Williams*, we recognized § 344, but refused to apply it to the facts because the nature of the harm, random crime in the community unrelated to the merchant's business, presented the merchant with no degree of control over its prevention. *Williams* at 501, n 15. Thus, contrary to the majority's assertion, we recognized in *Williams* that application of § 344 depends on the facts of a case, i.e., the nature of the harm and degree of control a merchant had in each case.

In *Mason,* we discussed the *Williams'* decision and cited Justice Levin's dissent in *Alexander v American Multi-Cinema*, 450 Mich 877; 540 NW2d 674 (1995), as support for distinguishing the *Williams* holding. *Mason* at 401-402, n 5. In *Alexander,* a theater patron was injured in a scuffle with another patron who was standing in line for a late night show. Justice Levin dissented from the majority's decision to deny leave, stating that he would grant leave to discuss a merchant's duty to protect its invitees from the criminal acts of third parties. Quoting § 344, Justice Levin explained that, although no invitor is automatically liable for criminal acts of third parties on the invitor's property, an invitor has a duty to act reasonably to protect invitees from *foreseeable* hazards. *Alexander* at 879-880. Distinguishing *Williams* on its facts, Justice Levin explained that the merchant in *Williams* was not faced with a foreseeable altercation because the merchant had no control over the

6

random, spontaneous nature of the harm. Thus, *Williams* addressed "the random assault bearing no relation to the merchant's business, and did not address the merchant's liability for risks created by the merchant's business." *Id.* at 882. Noting that this distinction is relevant, Justice Levin stated that although we have held that "a merchant is not *ordinarily* required to protect customers from the criminal acts of third persons, . . . [i]f one assumes that a *situation created by the defendant* will be classified as *extraordinary*, the distinction then becomes relevant." *Id.* at 881 (emphasis added). Thus, if the merchant created the situation that led to the harm, the situation can be treated as extraordinary and a merchant can be liable for the criminal acts that harmed its patrons, if the acts were foreseeable. Justice Levin noted that the facts in *Alexander* created such an extraordinary situation because the scuffle between the patrons waiting in line "was foreseeable in light of the owner's considerable experience with crowd control in general, and handling and organizing the pretheater crowd in particular." *Id*.

Contrary to the majority's assertion that the *Mason* holding is inconsistent with *Williams*, in *Mason* we recognized Justice Levin's dissent in *Alexander* as the method to distinguish the *Williams* holding and created a duty based on § 344 that essentially focused on the nature of the harm, the foreseeability of the harm, and the control a merchant has over the harm. We implicitly noted that a careful consideration of the facts in each case is essential to determine whether a § 344 analysis is justified. If the

7

nature of the harm is random and spontaneous, and thus unrelated to the character of the merchant's business, the merchant cannot be expected to foresee its occurrence, and reference to prior similar occurrences is not justified. If the nature of the harm was created by the character of the merchant's business, reference to prior similar occurrences is justified because a merchant can be expected to foresee such harm happening again, in light of his prior experience with such acts. Accordingly, we concluded that "merchants have a duty to use reasonable care to protect their identifiable invitees from the foreseeable criminal acts of third parties." *Mason* at 405. Our decision in *Mason* was therefore clearly based on a careful consideration of the common-law tort principles of control and foreseeability, as articulated in § 344, and how they coexist with the holding in *Williams.* Thus, clarification of the *Mason* duty is not necessary, as that decision clearly acknowledged how the control and foreseeability origins of § 344 may apply to certain factual scenarios without violating our holding in *Williams*.

## II

As the preceding discussion illustrates, premises liability law contains many nuances that, without complete consideration, may appear inconsistent. The majority has seized on this apparent, but vacuous, inconsistency and held that a clarification is necessary in this area of law. However, read closely, the principles have distinguishing characteristics that allow them to exist without conflict in three separate categories.

8

## (1) Traditional Premises Liability

Traditionally, a merchant has had a duty to protect its invitees from defects or dangerous conditions on the land of which the merchant knew or had reason to know.

## (2) Hybrid Premises Liability

Under hybrid premises liability, a merchant has a duty to protect its invitees from activities involving actors on the premises of which a merchant knew or had reason to know. The tricky part, however, is when the activity consists of criminal acts by third parties. If the activity on the land is a criminal act, it must be determined whether the character of the merchant's business and the nature of the act are of a sort that a merchant could be expected to anticipate. If the nature of the criminal act is random, spontaneous, and thus unrelated to the merchant's business and the invitee's purpose for being there, the situation falls into category three, discussed below. If, however, the nature of the criminal act is not random or spontaneous, and is related to the merchant's business and the invitee's purpose on the premises, as explained in *Mason* and Justice Levin's dissenting opinion in *Alexander,* we resort to the control and foreseeability origins of § 344 to determine whether the merchant has a duty. See Prosser & Keeton, Torts (5th ed), § 61, p 428 (stating that a possessor of land is required to take action when he has reason to believe, from what he has observed or from past experience, that the conduct of others on the land will be dangerous to other invitees, but not when the landowner cannot anticipate the harm).

9

### (3) The Exception To Hybrid Liability

The exception to hybrid liability is when there is a criminal act by third parties on the premises, but the act is random and spontaneous, having no relation to the merchant's business other than that it is a business, the merchant has no duty.  In the exception situation, the random, spontaneous nature of the act removes any degree of control a merchant has over the act occurring, thus making any application of the control and foreseeability origins of § 344 improper.  See, e.g., *Williams*.

### III

The facts of these cases must be examined to determine which of the three premises liability categories  governs. Because the harm did not result from a physical defect on the premises, the act does not fall within the traditional premises liability category.  Rather, the harm resulted from activity on the land, potentially criminal in nature, which requires us to decide whether the nature of the act qualifies it as a hybrid or exception situation.  The character of defendant Pine Knob's business created the risk of harm to its invitees, by subjecting its patrons to view concerts in a venue where sod throwing had previously occurred.  The sod throwing in these cases was, therefore, not random or spontaneous, was related to the invitee's purpose on the premises, qualifying these cases under the hybrid category, and thus justifies  applying the control and foreseeability origins of § 344.

Pine Knob charges its patrons to enter its forum to watch

10

concerts, where part of the seating area for patrons is a sod-covered hill. Once the patron sets foot inside the venue, he has entrusted himself to the control and protection of Pine Knob, and his ability to protect himself from activities that may occur on the premises diminishes. Thus, contrary to the majority's claim, Pine Knob has better control over the activities of patrons it has chosen to host than the patrons themselves. The potentially criminal activity in these cases that occurred in this controlled environment was patrons ripping up sod from the hill and throwing it. The question becomes whether this act arose from the character of Pine Knob's business, or was random or spontaneous. The majority has manipulated the class of activity at issue in this case, sod throwing, to be strictly criminal. In so doing, the majority ignores the fact that this activity, albeit potentially criminal,[1] only occurred because of the nature of Pine Knob's business. In other words, a patron at Pine Knob would not be subjected to injury from such a concert activity like sod throwing if he were not present on Pine Knob's premises; it is unique to Pine Knob's business. Because Pine Knob charged a fee for entry, subjected its patrons to seating on sod-covered ground, sod-throwing acts had occurred before,[2] and the harm suffered was a result of plaintiffs' purpose on

---

[1] The record indicates that some 100 sod-throwing patrons were ejected from the premises, pursuant to Pine Knob's policy.

[2] In *Lowry*, the sod throwing occurred once before at the same festival-type music concert, and in *MacDonald* it occurred twice in one night.

the premises and the nature of Pine Knob's business, to watch concerts at such a venue, I would find this an "extraordinary" situation, unlike that in *Williams.* These factors justify imposing a duty on Pine Knob. Pine Knob not only created the risk of harm to its invitees, but it had reason to know that such sod throwing may occur again, on the basis of its prior experience with such activity. This act is therefore unlike the random, spontaneous criminal act that occurred in *Williams,* which had nothing to do with the nature of the store owner's business, and the concerns of applying the control and foreseeability concepts do not arise. It thus becomes clear that the majority's overstated concern for subjecting merchants in high crime areas to increased liability is misplaced. Random crimes in the community are unique to the community, not to the businesses present in that community. Hence, the initial analysis, as proposed by Justice Levin and further explained in § 344, focuses on whether the act that injured the patron is unique to the merchant's business, not the location of the merchant's business. If the act is unique to the merchant's business, only then is it justifiable to say that the merchant has control over such acts and, thus, can foresee such future occurrences. Thus, retaining the control and foreseeability origins of § 344 in this situation does not vitiate the *Williams* holding, and Pine Knob should be held liable if a jury finds that the sod throwing was a foreseeable act and Pine Knob failed to take reasonable measures to protect its invitees from such foreseeable harm.

IV

Today the majority embarks on the unnecessary journey of clarifying the duty a merchant has to protect its invitees from criminal acts of third parties, as discussed in *Mason*. This clarification takes premises liability into an unfounded direction with far-reaching consequences.[3] By eradicating the two profound tenets behind the *Mason* duty, control and foreseeability, the majority has created an unprecedented formulation of the duty providing that if the act that caused the harm could be charged as criminal, the merchant can never be liable if it attempts to contact the police. Such a conclusion ignores an entire category of criminal acts that arise solely because of the character of the merchant's

---

[3] The following hypothetical example illustrates the fundamental problems with the majority's reformulation.

Defendant humane society allows persons interested in adopting animals to observe the animals through cages. There is a separate "dog wing" in which all the dogs are kept in individual cages. Patrons on the premises interested in adopting a dog are allowed access to the dog wing. A patron who is visiting the dog wing gets increasingly passionate about the dogs being cooped up and breaks open each cage, setting the dogs free. The dogs become scared and attack a family who was there adopting their new pet. Unfortunately, one of the children is severely injured. The humane society is familiar with this "passionate patron" syndrome, and it in fact occurred the previous day, killing a patron. Luckily for the humane society, under the majority's clarified *Mason* duty, this previous attack will not be considered, regardless of the number of times the attacks have happened, the humane society's experience with controlling the animals on its premises, and the experience the humane society has with the harm caused by "passionate patrons." Rather, in the midst of watching the dogs viciously attacking patrons, all the humane society must do to avoid liability to the injured patrons is to make the effort to call the police. Thus, even though the character of the business created the risk of harm, the humane society had past experience with such mishaps, and the degree of control the humane society has over its patrons was great, there is no duty to protect. I cannot agree that this is a proper formulation of the duty.

business and the invitee's purpose on the premises. Because this was clearly not intended when we created the *Mason* duty, I dissent.

In accordance with the original, unclarified *Mason* duty, in both of the instant cases I would deny summary disposition so that a jury may determine (1) whether the sod throwing was foreseeable, (2) whether the plaintiffs were identifiable invitees, and (3) whether defendant Pine Knob took reasonable measures to protect its invitees from the harm.

KELLY, J., concurred with CAVANAGH, J.